[S. F. No. 22991. In Bank. Dec. 11, 1974.]

EDWARD M. WALSH, as Trustee in Bankruptcy, etc., Petitioner, v.
EDWARD J. KIRBY, as Director, etc., et al., Respondents.

**COUNSEL**

Robert Edmondson and Mark C. Peery for Petitioner.

Evelle J. Younger, Attorney General, and Charlton G. Holland III, Deputy Attorney General, for Respondents.

**OPINION**

**WRIGHT, C. J.**—We granted a writ to review the decision of the Alcoholic Beverage Control Appeals Board (the board) affirming a decision of the Department of Alcoholic Beverage Control (the department) imposing a penalty of $9,250 on Antonio Duarte doing business as Lawton Liquors, a retail off-sale general liquor licensee, for 10 sales of distilled spirits at less than the minimum retail prices established in accordance with law. (Bus. & Prof. Code, §§ 24749-24757.)[1]

---

[1]Following the commencement of these proceedings Antonio Duarte filed a petition for voluntary bankruptcy (see fn. 8, *infra*) and Edward M. Walsh, as trustee in bankruptcy, succeeded to the assets of the estate of the bankrupt, including the license in question. Duarte is hereafter referred to as the "licensee" and Walsh, who filed the instant petition for a writ of review, as the "petitioner."

Petitioner complains of a practice whereby the department accumulated evidence of recurring sales of distilled spirits below established minimum retail prices, each sale constituting a different but essentially identical violation, before it filed its accusation charging the licensee with the whole series of violations and assessing concomitant cumulative penalties. Such practice, petitioner contends among other things, constitutes an arbitrary exercise of the statutory grant of authority and offends due process limitations. We agree and annul the imposition of cumulative penalties in the instant circumstances.

On November 4, 1971, without prior notice to the licensee, the department filed an accusation in 11 counts charging that on 10 separate occasions from August 31 to October 5, 1971, the licensee sold "distilled spirits at retail to an employee of the [department] at a price less than that provided for in the Minimum Retail Price Schedule duly filed with the [department]" and that such sales were in violation of Business and Professions Code section 24755.[2] The accusation also charged that on August 13, 1971, the licensee sold wine "at a price less than that provided for in the effective" price schedules established by law. After alleging that the licensee had no record of prior violations the department urged the existence of grounds for the imposition of monetary penalties and the suspension or revocation of the license, contending that continuance of such license would be contrary to public welfare and morals as set forth in the California Constitution, article XX, section 22,[3] and sections 24755.1[4] and 24200, sub-

---

[2]Section 24755 is a part of chapter 10 (Alcoholic Beverages Fair Trade Contracts and Price Posting) of division 9 of the Business and Professions Code. As pertinent here it prohibits the sale of brand-name packaged distilled spirits at less than the effective filed price with exceptions not here applicable. (Subd. (j).) The person required to file a schedule of prices for a particular trading area may be the licensed owner of the brand, a licensee, other than a retailer, authorized by the brand owner, a licensed manufacturer or rectifier under a brand owned by a retailer, or any other licensee approved by the department.

Hereinafter, unless otherwise specified, all statutory references are to the Business and Professions Code.

[3]Article XX, section 22, vests the Legislature with broad powers to regulate and control the manufacture, sale and distribution of alcoholic beverages, and provides for the creation and function of the Department of Alcoholic Beverage Control and the Alcoholic Beverage Control Appeals Board, within the legislative enactments.

[4]The full text of section 24755.1 as it existed at the time of the alleged violations was as follows:

"No criminal penalties shall be imposed on any licensee for a violation of the provisions of Section 24755 nor shall the license of a licensee be suspended or revoked for a violation of such section.

"The penalties imposed by the department for violations of such section shall be confined solely to monetary penalties for each violation committed during 36 consecutive months and shall be in the following amounts:

"For the first violation, two hundred fifty dollars ($250); for the second and subse-

division (a).[5] It was also alleged that additional grounds for suspension or revocation existed under section 24200, subdivision (b), in that the licensee had violated or permitted the violation of section 24862 and department rule 101(a)(2) (Cal. Admin. Code, tit. 4, § 101(a)(2)).[6]

A hearing on the accusation was conducted on March 27, 1972, in accordance with established procedures. Three days later the hearing officer issued a proposed decision in which he found that the allegations in all 11 counts were true. He recommended that a penalty of $9,250 for the 10 distilled spirits violations be imposed under section 24755.1, and that for the wine violation the license be suspended for 10 days under section 24862. On April 6 the department adopted the proposed decision in its entirety and ordered the licensee to pay a penalty of $9,250 or post a surety bond in like amount; it also ordered a 10-day suspension of the license.

The department denied a petition for reconsideration, the licensee posted a surety bond for the amount of the penalty and appealed the department's decision to the board. On November 22, 1972, the board, after the submission of written briefs and consideration of oral argument, issued its decision affirming the department's decision insofar as it concerned the 10 distilled spirits violations.[7] The board rejected the licensee's contention that

quent violations, one thousand dollars ($1,000). The penalties herein provided shall be due and payable by the licensee to the General Fund not later than 30 days from the date the department rendered its decision imposing the penalty. Should the licensee appeal the decision of the department, he shall either pay the amount of the penalty under protest or execute a surety bond in the amount of the penalty. The surety bond shall be executed by the licensee as principal and a corporation such as is mentioned in Section 1056 of the Code of Civil Procedure in this state as surety, payable to the General Fund at such time as the final decision is rendered affirming the department's decision. If the final decision should reverse the decision of the department, the penalty paid by the licensee under protest shall be returned to him with interest at the rate of 6 percent per annum or the surety bond executed by the licensee terminated. The license of a licensee against whom the department has imposed the monetary penalty and who has refused to pay the penalty for each violation under protest or execute a surety bond as herein provided shall be automatically suspended and shall remain suspended until such time as the licensee either pays the penalty under protest or executes the surety bond as herein provided.

"Each sale in violation of Section 24755 shall constitute a separate violation."

[5]Section 24200, subdivision (a), provides for the suspension or revocation of licenses "When the continuance of a license would be contrary to public welfare or morals . . . ."

[6]Section 24200, subdivision (b), additionally provides for revocation or suspension upon a violation of particular rules of the board or department, or of a particular penal provision of law.

Section 24862 prohibits the sale of wine except in accordance with effective price schedules or fair trade contracts. Department rule 101(a)(2) is to similar effect.

[7]The board held that the department had abused its discretion in ordering the 10-day suspension for the wine violation and reversed the order of suspension. The department sought and obtained a writ of review in the Court of Appeal to review the board's decision. On such review the board's decision insofar as it reversed the imposi-

section 24755.1 does not authorize a procedure by which the department may accumulate evidence of successive sales below minimum retail prices and then, in a single prosecution, impose cumulative penalties each of which is based on the finding of a single sale but measured in severity by the number of prior illegal single sales in the series. The board also rejected the licensee's contention that, if section 24755.1 permits the imposition of such cumulative penalties, it constitutes an improper delegation of legislative authority in that it provides no standards to guide the department in the assessment and cumulation of penalties, and that the imposition of cumulative penalties constitutes arbitrary action in violation of the due process clauses of the federal and state Constitutions.[8]

The Legislature adopted the Alcoholic Beverage Control Act "for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages." (§ 23001.) Specifically, in regard to the retail price maintenance provisions, the Legislature made its purpose clear: "It is the declared policy of the State that it is necessary to regulate and control the manufacture, sale, and distribution of alcoholic beverages within this State for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to the law. In order to eliminate price wars which unduly stimulate the sale and consumption of alcoholic beverages and disrupt the orderly sale and distribution thereof, it is hereby declared as the policy of this State that the sale of alcoholic beverages should be subjected to certain restrictions and regulations." (§ 24749.)

The attainment of the goal of promoting temperance proceeds on the assumption that "the elimination at the retail level of price cutting, bargain

tion of the suspension was annulled. (*Kirby* v. *Alcoholic Beverage Control Appeals Board* (May 7, 1973) 1 Civ. 32498.) We granted a hearing in that case during the pendency of the instant proceedings (S.F. 23026).

[8]On December 31, 1971, seven weeks after the commencement of these proceedings, the department filed a second accusation against the licensee charging another 21 violations of section 24755 and sought to impose additional penalties of $1,000 for each such violation. The violations charged in the second accusation were all alleged to have occurred following the filing of the first accusation. A hearing was held on the second accusation and on July 13, 1972, the department adopted the hearing officer's proposed decision finding each allegation of the accusation to be true and assessing a cumulative penalty of $21,000. On September 19, 1972, while the licensee's appeal of the department's decision on the first accusation was pending before the board, the licensee filed a petition for bankruptcy and was thereupon adjudged a bankrupt. It appears that the licensee sought no review of the department's decision as to the second accusation within proper time limits (see § 23081); that decision has become final and is not here challenged.

sales, and advertising of low prices tends to reduce excessive purchases of alcoholic beverages." (*Allied Properties* v. *Dept. of Alcoholic Beverage Control* (1959) 53 Cal.2d 141, 148 [346 P.2d 737].) Retail price wars "among liquor distributors may encourage retailers, struggling to withstand the pressure of ruinous competition, to sell liquor below cost in violation of Business and Professions Code section 17043 or to transgress the regulatory laws governing retail liquor distribution (Bus. & Prof. Code, §§ 25600-25666)." (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 362 [55 Cal.Rptr. 23, 420 P.2d 735].) A further goal to be achieved by the promotion of the orderly sale and distribution of alcoholic beverages is "the continued vitality of one method of marketing: the corner grocery store." (*Id.,* at p. 362.) The Legislature, when it first enacted section 24755.1 in 1965, sought to promote these broad purposes of the retail price maintenance provisions of the Alcoholic Beverage Control Act.

Prior to the enactment of the Alcoholic Beverage Control Act the department could punish fair trade violations by bringing criminal prosecutions (§ 25617) and by filing for the suspension or revocation of the license of the alleged violator pursuant to section 24200. (See *Wilke & Holzheiser, supra,* 65 Cal.2d 349, 358, 370.) These remedies proved impractical because of the delay and great expense involved in lengthy litigation on appeals from the department's orders (*id.,* at pp. 372-373; Review of Selected 1965 Code Legislation (Cont.Ed.Bar 1965) p. 24) and because the department's orders were automatically stayed when appealed (see § 23082). In enacting section 24755.1, the "Legislature determined that the imposition of mandatory fines, which become immediately payable despite appeal or mandate, would prove more effective in enforcing the statute than criminal prosecution, or discretionary suspension and revocation of licenses . . . ." (*Wilke & Holzheiser, supra,* 65 Cal.2d 349, 372.) The mandatory monetary fines with the elimination of the practice of suspending or revoking licenses as penalties for violations of section 24755 were expected to provide greater deterrence and to achieve better administrative efficiency in compelling compliance with the statutory scheme of controlling sales of alcoholic beverages. (*Id.*)[9]

---

[9]As originally proposed section 24755.1 provided that only those prior violations within a consecutive 12-month period would be considered in fixing the penalty, that the penalty for a first violation would be $50 with graduated increases to $500 for the fifth and subsequent violations. Apparently the penalties and time interval established in the proposed version were not deemed sufficient to have an adequate deterrent effect, and the section was amended to substitute 36 for 12 consecutive months and to increase the penalties to $250 for the first violation and $1,000 for each succeeding violation.

■ The foregoing discloses that section 24755.1 is not intended merely to exact tribute for the general fund or, by the imposition of insurmountable financial burdens, to punish or eliminate a licensee who is in default. (See *Cornell* v. *Reilly* (1954) 127 Cal.App.2d 178, 184 [273 P.2d 572].) Rather the purpose of the statute is to compel, through the duress of monetary penalties compliance by all licensees with the fair trade provisions enacted by the Legislature. The statute thus requires administrative practices which induce conformance with rather than avoidance of the retail price maintenance provisions. The statute is, moreover, in character intended to serve as a notice or warning as it provides a relatively light penalty for the initial violation with the threat of more severe penalties should the licensee thereafter fail to conform.

The administration of the Alcoholic Beverage Control Act, within the scope of the purposes of that act, is initially vested in the department. Its decisions, however, are subject to administrative review by the board and a final order of the board is, in turn, subject to judicial review. The scope of judicial review has been limited since 1967 (Stats. 1967, ch. 1525, p. 3635, § 4) to determinations whether: "(a) The department has proceeded without or in excess of its jurisdiction. (b) The department has proceeded in the manner required by law. (c) The decision of the department is supported by the findings. (d) The findings in the department's decision are supported by substantial evidence in the light of the whole record. (e) There is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before the department." (§ 23090.2.)[10] Such limitations on judicial review are now identical in substance to limitations imposed earlier on the scope of administrative review. (Cal. Const., art. XX, § 22; § 23084; see *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 436 [102 Cal. Rptr. 857, 498 P.2d 1105].)

Prior to the 1967 legislation the scope of judicial review was provided for in section 24301, repealed in that year. (Stats. 1967, ch. 1525, p. 3636, § 5.) That section authorized judicial review "as provided by law in any court of competent jurisdiction in the county in which the person affected resides."[11] The review then "provided by law" was by writ of mandate as

---

[10]An affirmative finding on review by the board as to subdivision (e) of section 23084 (identical in substance to subd. (e) of § 23090.2) authorizes the board to remand the matter for further consideration without first reversing or affirming the department's decision. In all other instances the decision must be affirmed or reversed. (§ 23085; see also Cal. Const., art. XX, § 22.)

[11]The 1967 legislation also limited judicial review to "the Supreme Court or to the court of appeal for the appellate district in which the proceeding arose" (§ 23090), thus eliminating the superior court as the first level of judicial review.

set out in Code of Civil Procedure section 1094.5. We deem the 1967 legislation, however, to have confined the scope of judicial review to those areas specifically enumerated in section 23090.2. (See Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 3.7, 3.8, pp. 24-25.)[12] It is manifest that if the particular conduct challenged in the instant case can be subjected to judicial review and intervention it can be done only under subdivision (b) of section 23090.2, requiring the department to have "proceeded in the manner required by law." It is equally manifest that a governmental entity cannot be deemed to have so proceeded when it fails to act in a manner which is designed to accomplish the purposes for which it was created or which otherwise denies due process of law to those affected by its decisions.

■ It cannot be disputed that the discretion legally vested in an administrative body, such as the department, is broad and inclusive and is not subject to judicial control when exercised within its legal limits. (*Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra*, 52 Cal.2d 287, 295 [341 P.2d 296]; *Macfarlane* v. *Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 84, 91 [330 P.2d 769].) However, discretion cannot be exercised so as to "enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled. . . . 'It is . . . a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*Gossman* v. *Gossman* (1942) 52 Cal.App.2d 184, 194-195 [126 P.2d 178]; quoting from *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424.)

■ The department in the instant case has clearly acted in an excessive manner: first, by proceeding against the licensee in a way designed not to induce conformance with fair trade practices and, second, by im-

---

[12]Since the 1967 legislation we have not had occasion to consider the nature and limits of the scope of judicial review where the issue is whether the department has "proceeded in a manner provided by law." In a *post*-1967 decision, *Kirby* v. *Alcoholic Bev. etc. Appeals Bd., supra*, 7 Cal.3d 433, we reviewed a departmental decision denying a petition for an off-sale beer and wine license. The denial was based on a departmental finding that issuance of the particular license would "be contrary to public welfare or morals." (Cal. Const., art. XX, § 22.) In considering the limits of our scope of review under the 1967 legislation in that case we relied on decisions predating the new legislation. However, the issue in *Kirby* was whether there was sufficient evidence in support of the department's finding, and it was concluded that on the record the factual resolutions fell " 'within the broad area of discretion which the Department was empowered to exercise.' (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.*, 55 Cal.2d 867, 876 . . . .)" (*Id.*, at pp. 436, 439.) The scope of judicial review on evidentiary matters, as in *Kirby*, however, is the same in substance under the new legislation (see § 23090.2, subds. (c), (d)) as it was before that legislation (see Code Civ. Proc., § 1094.5, subd. (b)). Our reliance on the earlier decisions cited in *Kirby* in support of our statement of the scope of judicial review of *evidentiary* matters was thus warranted.

posing cumulative penalties which result in de facto revocation and are excessive when measured against the licensee's conduct and the purposes sought to be achieved by the penalty provisions.

As to the first of such abuses, it is manifest that the department's practice whereby a licensee's misconduct is knowingly allowed to continue while the department elects to accumulate evidence of multiple violations before filing an accusation naturally tends to foster continuing violations and disruptions in the orderly sale and distribution of alcoholic beverages. Such continuing conduct might well tempt competitive retailers to join in the unlawful practices, thus leading to even greater disruptions. It is obvious that compliance with fair trade provisions by licensees can best be accomplished by the department's timely action including the prompt filing of accusations giving notice of violations of which it is aware. A departmental practice whereby notice given in a timely manner is withheld while the licensee is afforded an opportunity to engage in a series of violations thus defeats the very purposes of the fair trade law. The arbitrariness of the department's conduct is the greater, moreover, when it elects, for purely subjective reasons, whether (1) it will file an accusation after the first violation and thus provide the warning intended by the Legislature that future violations will result in more severe sanctions or (2), as in the instant case, deprive the licensee of that warning by not filing the accusation until he is already exposed to such severe sanctions.

As to the second departmental abuse, it is evident that the purposes of the statute are further frustrated by the imposition of heavy cumulative penalties upon a retailer when such penalties are used as weapons to effect a de facto revocation of a license without prior adequate notice of wrongdoing to a licensee. (See *Top Hat Liquors* v. *Department of Alcoholic Beverage Control,* filed this date, *post,* p. 107 [118 Cal.Rptr. 10, 529 P.2d 42].) Such de facto revocation is particularly apparent in the case of the small retailer as is illustrated here. As previously noted, a primary purpose of the legislation is to effect compliance by licensees rather than revocations or suspensions of their licenses, and section 24755.1 expressly prohibits a direct revocation or suspension for a violation. (See *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1969) 71 Cal.2d 1200 [81 Cal.Rptr. 241, 459 P.2d 657].) The power vested by the statute is indeed perverted when the department utilizes its tools to do indirectly that which is directly and expressly prohibited. (See *Taylor* v. *Spear* (1925) 196 Cal. 709, 717 [238 P. 1038].)[13]

---

[13]Changes made by a 1972 amendment to section 24755.1, not here applicable, provide for the imposition of a fine of $250 or a suspension of up to 10 days for the first violation, a fine of $1,000 or a suspension of up to 30 days for the second viola-

It is not necessary that we speculate whether the cumulative penalty imposed in any particular instance is excessive in view of a licensee's conduct and financial status and would thus result, as with the instant licensee, in the surrender of his license. It is enough to note that the departmental practice complained of *could* result in the imposition of whatever total penalty the department, arbitrarily or otherwise, deemed to be sufficient before filing an accusation and giving notice that illegal sales must be terminated. Although the Legislature may vest the department with authority to impose penalties for sales of distilled spirits in violation of the fair trade laws, the delegation of an unlimited power to determine how great a penalty to impose would be an unlawful delegation of legislative discretion (see *State Board* v. *Thrift-D-Lux Cleaners* (1953) 40 Cal.2d 436, 448 [254 P.2d 29]) and, certainly, the exercise of such an unlimited power through the device of unlimited cumulative penalties would likewise be unlawful.

The particular vice in the instant case, however, lies in the subjective determination by the department that it would seek a penalty beyond that provided for a first violation in light of the licensee's previous good record. We recognize that in order to fortify its evidence of a violation to be later charged in an accusation the department may deem it prudent to obtain evidence of more than one sale in technical violation of the statute before filing an accusation. The gathering of such supportive evidence would not in itself, of course, constitute arbitrary or capricious conduct.[14]

█  When, as here, a governmental entity vested with broad administrative powers acts in an arbitrary manner so as to affect capriciously the property or property rights of persons subjected to its administrative con-

tion, and a fine of $1,000 or a suspension or revocation for the third and subsequent violations. (Stats. 1972, ch. 1008, § 1, p. 1855.)

We do not deem the amendment to constitute a change in the objectives of the Alcoholic Beverage Control Act, but rather to vest the department with more effective tools to obtain licensee compliance. Although the department may now seek suspensions and even revocations it is clear that the Legislature intended to establish a careful gradation of penalties so that persistent violators will be punished more severely than occasional violators. As in the instant case, a department practice whereby it sought to impose the maximum penalty against a licensee without a record of prior violations by accumulating evidence of three or more illegal sales before filing an accusation, thus making the careful gradation of penalties established by the amendment meaningless, would appear to be arbitrary. (See *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 595 [43 Cal.Rptr. 633, 400 P.2d 745].)

[14]We do not express any view whether departmental conduct similar to that in the instant case would be arbitrary if exercised against a licensee who, the record would show, was an habitual offender and unwilling to conform. (See *Dave's Market, Inc.* v. *Dept. Alcoholic Beverage Control* (1963) 222 Cal.App.2d 671, 680 [35 Cal.Rptr. 348].)

trols it has denied to those persons due process of law. "Arbitrary action is not due process." (*Rudder* v. *United States* (D.C. Cir. 1955) 226 F.2d 51, 53 [96 App.D.C. 329].) Quoting from a concurring opinion by Justice Bradley in *Davidson* v. *New Orleans* (1877) 96 U.S. 97 [24 L.Ed. 616], we have stated: " 'In judging what is due process of law, respect must be had to the cause and object of the taking . . ., and if found to be suitable or admissible in the special case, it will be adjudged to be due process of law; but, if found to be arbitrary, oppressive and unjust, it may be declared to be not due process of law.' " (*Wulzen* v. *Board of Supervisors* (1894) 101 Cal. 15, 18 [35 P. 353]; see also *Bogan* v. *New London Housing Authority* (D.Conn. 1973) 366 F.Supp. 861, 866-867.) We distinguish action which is arbitrary or capricious from that which falls within broad discretionary limits. ▆▆▆ It is only when an exercise of a discretionary power becomes so abusive that it is the equivalent of arbitrary or capricious action that it may be subjected to judicial review and intervention pursuant to section 23090.2, subdivision (b). Such is the present case.

For reasons stated above we conclude that the imposition of cumulative penalties resulting in the de facto revocation of the license in the instant case is contrary to the provisions and purposes of the Alcoholic Beverage Control Act, is arbitrary and capricious in light of those purposes and constitutes a denial of due process of law. The department has thus failed to proceed "in the manner required by law" (§ 23090.2, subd. (b)).

The decision of the board is annulled and the matter is remanded to the department for reconsideration of the penalty consistent with the views expressed herein.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Burke, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.