[Civ. No. 45743. Second Dist., Div. Five. June 30, 1975.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
JAMES EUGENE ROSS, Real Party in Interest.

**COUNSEL**

Joseph P. Busch, District Attorney, Harry B. Sondheim and Arnold T. Guminski, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Brian K. Burgess, under appointment by the Court of Appeal, and Von Herzen, Catlin, Reinjohn & Clements for Real Party in Interest.

**OPINION**

**LORING, J.\***—This petition for writ of mandate/prohibition alleges that James Eugene Ross (Ross), real party in interest, was convicted of a

---

*Assigned by Chairman of the Judicial Council.

violation of Penal Code section 459 (burglary) in the second degree. When he appeared for hearing on his application for probation and for sentencing on December 17, 1974, the trial judge suspended further criminal proceedings and referred him to Department 95[1] of the superior court pursuant to section 3051 of the Welfare and Institutions Code in order that an examination and hearing could be had to determine whether Ross was addicted to the use of narcotic drugs or by reason of repeated use of narcotics was in imminent danger of becoming so addicted and pending such hearing he was remanded to the custody of the sheriff. On January 10, 1975, the District Attorney of the County of Los Angeles duly filed a petition under section 3051 to determine whether or not Ross was an addict or in danger of becoming an addict. The judge presiding in Department 95 duly made an order on January 15, 1975, appointing Doctors A. E. Davis and Blake Skrdla to examine Ross. They examined Ross on January 16, 1975,[2] and filed with the court their certificate as medical examiners. After recitation of certain facts regarding the alleged use of narcotics by Ross, both doctors concluded that Ross was "Not now [an] addict or [in] imminent danger [of becoming an addict]—Dismiss" and filed with the court on January 16, 1975, their certificate accordingly. The minutes of the court on that date read as follows:

"In this matter the examining physicians have determined that the Respondent is not presently a narcotic drug addict. However, it is the Respondent's desire that he be committed to the California Rehabilitation Center.

"The matter is continued to January 24, 1975, for further argument and disposition.

"The Respondent is remanded to the Sheriff."

When the matter was again before the court on January 24, 1975, the court concluded that Welfare and Institutions Code sections 3103.5 and 3051 "do not prevent the court from setting a matter for hearing on the issue of narcotic addiction, even though the examining doctors feel the

[1]Department 95 is the department of the court to which all narcotic addiction cases are assigned.

[2]The petition is confused as to what actually happened as is explained under the discussion of the facts, *infra.*

respondent is not an addict."[3] The People filed a petition for writ of mandate/prohibition naming the superior court as the respondent and Ross as the real party in interest. We granted an alternative writ.

## CONTENTIONS

Petitioner contends:

I. The superior court acted illegally and in excess of jurisdiction when it set the petition for jury trial over the district attorney's objection and notwithstanding the fact that the court-appointed physicians had certified that Ross was not an addict or in danger of becoming an addict.

## FACTS

In his opposition to the People's petition, Ross does not deny any of the material allegations. However, he alleges certain additional facts (which are not denied by the People). Ross alleges that he entered a plea of guilty to the charge of second degree burglary on November 26, 1974, that he was [first] referred to Department 95 on December 17, 1974, under Welfare and Institutions Code section 3051, that on December 24, 1974, the judge in Department 95 appointed Doctors Markman and Skrdla to examine him and after examination said doctors decided and reported on December 26, 1974, that Ross was not an addict or in imminent danger of becoming one and the judge in Department 95 thereupon ordered Ross returned to the referring court; that on January 7, 1975, a judge in the referring court [who was not the judge who made the referral on December 17, 1974] re-referred Ross to Department 95, finding that "the facts of the case did not warrant the conclusion by the

---

[3]The entire minute order reads:

"The Respondent having been found not to be a narcotic addict by the examining physicians, but wishing to be committed to the California Rehabilitation Center, matter comes on for argument as to whether he is entitled to a hearing on the question of addiction. The Respondent is present with counsel.

"Argument is presented, and the matter is submitted.

"The Court finds that Sections 3103.5 and 3051 of the Welfare and Institutions Code do not prevent the Court from setting a matter for hearing on the issue of narcotic addiction, even though the examining doctors feel the Respondent is not an addict.

"The Court declares a bias in this matter, and states it would be preferable to have future proceedings held in Department 95-A. Counsel for Respondent states he has no objection to the matter being heard before a Judge Pro Tem.

"The Court finds the Respondent has the right to either a Court or Jury Trial. The Respondent elects to have a trial by jury, and the matter is set for jury trial on February 18, 1975, in Department 95-A.

"The Respondent is remanded to the Sheriff."

examining doctors that Ross was not an addict or in danger of becoming one and therefore ordered that Ross be examined again." It thus appears that the referral to Department 95 referred to by the People was the first referral but the examination which the People refer to was the result of the second referral. In the certificate of medical examiners dated January 16, 1975, Doctors Davis and Skrdla recite the following:

"General Physical Condition, Degree and History of Addiction; Present Physical Signs of Addiction or Use: Brian Burgess, pvt. counsel present. Arrest Aug. 13, 1974, sec. degree burglary, in custody to date; from Metro S.H. Aug. 11, AWOL, at Metro Aug. 10 & 11; in CYA placement 5 months to 8-9-74; on the street Aug. 21-27, 73. Sniffed heroin in CYA 3 or 4 X. Heroin at age 14; up to 4 spoons in a day in Sept. 1972; longest run 4 or 5 months in '72, ended by arrest; & *last withdrawals.* Fixed 3 X Aug. 12 & 13; & daily Aug. 21-27, '73, also alcohol & 'reds' concurrent; fixed 'reds' & LSD in 1971 a few times—very old & faded tracks, L. elbow & wrist—

"Out of custody 6 or 7 da. in 8/73. Claims fixed 10 X in L. wrist; also, & cocaine & alco. On street only 2 1/2 days since 8/73, in 8/74, & claims fixed 3 X on 1 spoon of heroin then. Also drank whiskey, tequila. No evidence of tolerance or physical dependence since Oct. 1972.

"He denies he would use drugs if released, because of his religious conversion in Aug. 73, and he would go to live with the family which converted him.

"Tentative Diagnosis and Recommendation for Disposition or Supervision, Treatment and Care: Not now addict or imminent danger—Dismiss—"

When the judge in Department 95 set the matter for jury trial he stated:

"THE COURT: 3103.5 and 3051 do not prevent the Court from setting the matter for a hearing on narcotic addiction and that, in fact, the defendant has the right to demand that hearing even though the two original Doctors or any subsequent Doctors have found that he is not a narcotic addict and, therefore, he is entitled to a hearing on narcotic addiction.

"Now, I have one problem. I have come to the conclusion he is manipulative. I have come to the conclusion that being as acquainted as I am with Drs. Markman, Skrdla and Davis—Dr. Davis has been examining narcotic addicts for 16, 17 years. He has probably examined more narcotic addicts than any Doctor in the world because this as a county-wide jurisdiction, 7 million people as you know—Dr. Markman for many years, Dr. Skrdla for many years, and I have therefore acquired a bias against your defendant.

"In other words, I'm satisfied that he is not a—or at least I'm of the general opinion that he really isn't a narcotic addict. *He is just a criminal that would prefer to go to C.R.C.* And, therefore, I do admit to a bias against him and I would not want to try the case." (Italics ours.)

Court and counsel then engaged in a discussion regarding whether Ross should stipulate to a hearing by a commissioner and if he did so and the finding was that Ross was not an addict or in imminent danger of becoming an addict whether or not Ross would thereafter be entitled to a jury trial in view of the statutory provisions (§ 3051) that a jury could be demanded after an *affirmative* finding. The court expressed the opinion that Ross would not be entitled to demand a jury *after* a commissioner or judge had made a negative finding that he was *not* an addict. The court then stated:

"Now, that specifically says there is a right to a jury trial only if there is a commitment. And, therefore, my original thinking is correct that if you have this hearing before a judge or commissioner and there is no commitment to C.R.C., to the Department of Corrections, you will not have the right to a jury trial because that is not a question of judicial power. That is simply a question of procedure.

"And I doubt very much if there is a right both to a court and a jury trial, particularly since I now offer you a jury trial.

"MR. BURGESS: We will take the jury trial.

"THE COURT: You would prefer that. All right, then.

"We'll set this, then, for the jury trial."[4]

---

[4]The deputy district attorney protested such an order and the following colloquy occurred:
"MR. TSO: Your Honor, now you have the People in a dilemma. I don't think we have

## Discussion

█ The sole issue which is involved herein arises from a very limited and narrow factual base. Or perhaps more accurately no factual basis whatsoever. Here the first court-appointed experts concluded, the second court-appointed experts concluded, the district attorney concluded and the trial judge concluded that Ross was not an addict or in danger of becoming an addict. Furthermore, Ross presented no medical evidence of any kind that he was an addict or in danger of becoming an addict. His own declaration to the court-appointed examiners was that if he were released he would not use narcotics because he had undergone a religious conversion. The *SOLE* basis for the court's order for a jury trial was that Ross would rather go to the California Rehabilitation Center than to state prison. That is not a sufficient factual or legal basis for a jury trial under section 3051. We conclude that the court abused its discretion and acted in excess of its jurisdiction when it made its order for such jury trial when such order had no other basis.

the statutory authority to go into a court on a jury trial to prove the defendant is not a narcotic addict nor a person in danger of becoming addicted.

"And in light that the cases under the Government Code have provided, the District Attorney can't control his own case and in light that there is no statutory provision for us being involved in this matter of proving that Mr. Ross is not a narcotic addict, who is going to be the adverse party in this action?

"THE COURT: It's a complex question.

"MR. TSO: Your Honor, this is a matter of–the involvement of Mr. Ross here is under this statutory proceeding. And I can find cases, if the Court would permit me, that state that where there are statutory proceedings, those proceedings must be followed strictly in accordance with the statute.

"We've gone out of the realm of the statute to the point now where the People are in a dilemma.

"THE COURT: You are quite right.

"MR. TSO: We have shifted the burden of proof from one party to another and imposed upon the District Attorney's Office who does not—and I would indicate this to the Court—does not wish to go forward with proving that Mr. Ross is a narcotic addict because under the state of evidence as we know it and have acquired it from the Court's witnesses, we do not have a proper case to deprive this defendant of his liberties by incarcerating him at the narcotic rehabilitation center.

"And for us to go in to an open court of law and to go on the record, Your Honor, I don't think that is in the best interest of the administration of justice.

"THE COURT: What you are really saying is that you would be urging the case that you do not believe in.

"MR. TSO: Well, first, Your Honor, of course I don't believe we have the authority to go in there, the authority granted to the People or the District Attorney's Office by the statute, itself.

"The statute says that the District Attorney's Office shall prosecute the action. We are not prosecuting any action. We are defending an action.

"Your Honor, we are simply defending the statutory language that the legislature has used."

In *In re Walker,* 71 Cal.2d 54, 59 [77 Cal.Rptr. 16, 453 P.2d 456], the Supreme Court speaking of the necessity for a medical examination to *verify* the person's addicted condition as outlined in *In re Cruz,* 62 Cal.2d 307 [42 Cal.Rptr. 220, 398 P.2d 412], said: "In a footnote to our quoted language, however, we admonished that 'the protection of both the individual and society would seem to be served by, *if not to require,* a medical examination in any event to verify the person's addicted condition. . . . [¶] An examination by court-appointed physicians in waiver cases thus serves to protect the volunteer from a commitment entered into as a result of mistake, duress, depression or fear; indeed, *it also protects the state, by assuring that all persons committed to its overburdened rehabilitation facilities are genuinely in need of the services there provided."* (Italics ours.)

Section 3051 of the Welfare and Institutions Code provides that upon a negative certification from the examining doctors, the defendant shall be remanded to the criminal department for further proceedings. The statute reads in part: "A written report of the examination by the physicians shall be delivered to the court, and if the report is to the effect that the person is not addicted nor in imminent danger of addiction, it shall so certify and return the defendant to the department of the superior court which directed the filing of the petition for such further proceedings on the criminal charges as the judge of such department deems warranted." No provision of the statute authorizes a defendant to demand a jury trial merely because he personally prefers to go to the California Rehabilitation Center rather than to prison. The record here is clear that that was the *sole* basis for the court's order for a jury trial.

In the instant case, the court's own words indicate that it was not in doubt as to any probable cause for the trial.

"3103.5 and 3051 do not prevent the Court from setting the matter for a hearing. . . . Now I have one problem. *I have come to the conclusion he* [*Ross*] *is manipulative."* (Italics ours.)

The court went on to praise the competence of Doctors Markman, Davis and Skrdla, and expressed confidence in their diagnoses. It then stated:

". . . I have therefore acquired a bias against your defendant.

"In other words, I'm satisfied that he [Ross] is not a—or at least *I'm of the general opinion that he really isn't a narcotic addict.* He is just a criminal that would prefer to go to C.R.C."

A second factor[5] indicating error lies in the fact that no affidavits or declarations were presented to support Ross' claim that he was an addict. Ross presented no medical evidence as to his use of narcotic drugs. He did not even request that the court appoint a new doctor of his choosing to re-examine him. Ross himself did not offer evidence on this (or any other) subject. The court had no evidence upon which to base a judicial discretion in support of an order for jury trial.

In *Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.,* 270 Cal.App.2d 275 [75 Cal.Rptr. 848], this court dealt with a similar problem. That case concerned the setting aside of a default judgment by a trial court, due to excusable neglect on the part of counsel.

The court specifically stated that legal discretion on granting relief was not to be bestowed ex gratia: "Discretion is abused in granting relief from default if the moving party's supporting affidavit or declaration fails to set forth facts sufficient to constitute grounds for relief." *(Supra,* at p. 280.)

The court also stated that: "In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases . . . ." *(Supra,* at p. 279.)

In the instant case, the court, acting as the finder of fact, was not in doubt. No supporting evidence (i.e., either medical reports or affidavits or declarations) was presented. There was nothing upon which to even base a finding of a "doubtful case."

The court went even further by urging Ross to select a jury trial and waive a hearing in front of a commissioner. The court stated as a reason for Ross' choosing a jury trial: "[I]f he [Rich] finds that he [Ross] is not a narcotic addict, why, I'm inclined to think that is the end of it. . . . I doubt very much whether I'm going to find that if he [Ross] is found not

---

[5]We mention this factor merely to point up the fact that no medical evidence was presented upon which the court could base its order. We do not thereby intend to intimate or decide that Ross did or did not have a right to present such evidence. That issue is not involved in this appeal.

to be an addict that he [Ross] now has a right to have a jury decide whether he is an addict.

"Now, that specifically says there is a right to a jury trial only if there is commitment. And, therefore, my original thinking is correct that if you have this hearing before a judge or commissioner and there is no commitment to C.R.C., to the Department of Corrections, you will not have the right to a jury trial. . . ."

*Walsh* v. *Kirby,* 13 Cal.3d 95, 103 [118 Cal.Rptr. 1, 529 P.2d 33], speaks to this point when it says: "discretion cannot be exercised so as to 'enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled.' "[6]

The record is clear that the court was not in doubt as to the issue of Ross' addiction to narcotic drugs. The court made no affirmative finding that Ross was an addict or in danger of becoming an addict. In this case we decide *only* that Ross is not entitled to a jury trial on the issue of narcotic addiction when the sole basis for such jury trial is that Ross would rather go to C.R.C. than state prison. The granting of a jury trial under such conditions was beyond the power of the court.

Petitioners have sought relief through either a writ of mandate or prohibition requesting the court to choose the more appropriate remedy. The case of *Hays* v. *Superior Court* (1940) 16 Cal.2d 260 [105 P.2d 975], provides that a writ of mandate lies in cases involving judicial discretion when that discretion has been abused. (*State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428 [304 P.2d 13], and *Simmons* v. *Superior Court,* 96 Cal.App.2d 119 [214 P.2d 844, 19 A.L.R.2d 288].)

We conclude that the People are entitled to a writ of mandate as prayed.

Let a writ of mandate issue directing respondent court to vacate its order in that certain action entitled, The People of the State of California, in the best interest and protection of society and James Ross, No. NDA 18039, setting a jury trial pursuant to Welfare and Institutions Code sections 3103.5 and 3051, and directing said court to remand said case to the appropriate criminal department of the superior court for

---

[6]Quoting from *Gossman* v. *Gossman,* 52 Cal.App.2d 184, 194-195 [126 P.2d 178].

further proceedings therein and pending such action the respondent court is prohibited from proceeding with said jury trial.

Kaus, P. J., and Stephens, J., concurred.