[No. F016733. Fifth Dist. Oct. 2, 1992.]

GARY MAX FEARN, Plaintiff and Respondent, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Floyd D. Shimomura, Assistant Attorney General, Cathy

A. Neff and Geoffrey L. Graybill, Deputy Attorneys General, for Defendant and Appellant.

Michele Belanger-McNair for Plaintiff and Respondent.

## OPINION

**BEST, P. J.**—This case presents the issue whether there is a conflict between the administrative per se laws mandating suspension of driving privileges of second offenders (Veh. Code, §§ 13353.2 and 13353.3, subd. (b)(2))[1] and preexisting second-offender probation statutes providing for a restricted driver's license (§§ 23165, 23166, subd. (b), 13352, subd. (a)(3), and 13352.5, subd. (a)). Contending there is a conflict, respondent Gary Fearn petitioned the superior court for a writ of mandate to set aside an order of the Department of Motor Vehicles (DMV) suspending his driving privileges. The petition was granted. The DMV appeals from the superior court judgment granting the petition. We reverse in part and affirm in part.

### ACTUAL AND PROCEDURAL HISTORY

Fearn was arrested for driving under the influence of alcohol in violation of section 23152 on November 8, 1990. His intoxilizer breath test results showed a blood-alcohol concentration (BAC) of .11 percent. Pursuant to sections 13353.2, subdivision (a) and 13353.3, subdivision (b)(2), the DMV suspended his driver's license for one year effective December 23, 1990, for driving with a BAC greater than .08 percent and because he had a 1989 conviction of violating section 23103.

On January 14, 1991, Fearn pleaded guilty in municipal court to a violation of section 23152, subdivision (b). The court placed him on probation with conditions applicable to a second offender pursuant to sections 23165 and 23166, subdivision (b). The conditions included payment of a fine, placement in an adult offender work program, and attendance at an alcohol treatment program. The court also restricted Fearn's driver's license for one year[2] to travel to and from work and the alcohol treatment program.

On January 29, 1991, Fearn presented to the DMV the documents necessary to obtain a restricted license in accordance with the terms of his

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

[2] Respondent concedes the one-year restriction was error. Pursuant to sections 23166, subdivision (b) and 13352, subdivision (a)(3), the second offender's license is restricted for 18 months. The order granting the petition for writ of mandate ordered reinstatement of the court ordered restricted license, amending the period of restriction to 18 months.

probation. The DMV refused to accept the documents and issue a restricted license because of the one-year administrative suspension imposed pursuant to section 13353.2. On March 13, 1991, the DMV notified Fearn he had incurred an additional suspension effective February 23, 1991, through June 22, 1992. That suspension was authorized by section 13352, subdivision (a)(3) because Fearn had not complied with the prerequisites to obtain a restricted license within the time limits of section 13352.5, subdivision (d).

Thereafter, Fearn requested a hearing on the administrative per se order of suspension. He challenged the suspension of his license on an alleged conflict between the administrative per se laws mandating a one-year suspension for second offenders and preexisting second-offender probation statutes which provide for licensure restriction rather than suspension. The DMV upheld the administrative suspension.

Fearn filed a petition for writ of mandate with the superior court. He did not contest the factual basis for the licensure suspension but contended, first, the mandatory language of section 13352.5, ". . . the department shall not suspend . . . but shall restrict the privilege of any person to operate a motor vehicle . . ." must prevail over the language of the administrative per se suspension statute, section 13353.2. Second, the 18-month suspension imposed pursuant to sections 13352, subdivision (a)(3) and 13352.5, subdivision (d) was illegal and violated his due process rights because the DMV refused to accept, within the applicable time limits, the documentation necessary for Fearn to obtain a restricted license pursuant to the terms of his probation. Third, imposing multiple penalties for the same offense was unconstitutional. The DMV opposed the petition. After a hearing, the court granted the petition apparently concluding that section 13352.5, subdivision (a), which authorized licensure restriction as a condition of probation, prevailed over sections 13353.2 and 13352, which mandated administrative suspension. This appeal followed.

DISCUSSION

1.  *Does section 13353.2 conflict with sections 13352.5 and 23166?*

█   In *Robertson* v. *Department of Motor Vehicles* (1992) 7 Cal.App.4th 938 [9 Cal.Rptr.2d 319]) the court considered the identical issue raised here and concluded the administrative per se laws and the preexisting second offender statutes do not conflict. The court held that the Legislature, in enacting those statutes, contemplated two processes—one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature. The processes are, for the most part, intended to

operate independently of each other and to provide for different dispositions. (*Id.* at p. 947.)

We agree with the *Robertson* court's reasoning and find it dispositive of this issue. Accordingly, when a second offender such as Fearn suffers both the administrative suspension of his driving privileges and probation and licensure restriction pursuant to a criminal proceeding, the following disposition is appropriate. The criminal and civil dispositions run concurrently; 12 of the 18 months of probation and license restriction run concurrently with the 12-month administrative suspension, with suspension being the controlling disposition during the period. At the conclusion of the one-year suspended term, the remaining six-month portion of the restricted term shall continue to run. (*Robertson* v. *Department of Motor Vehicles, supra,* 7 Cal.App.4th at p. 948.)

2.  *Does imposing two licensure suspensions for one offense violate the proscription against double punishment or respondent's due process rights?*

█ Fearn contends the imposition of an administrative licensure suspension as well as a criminal licensure suspension violates Penal Code section 654's proscription against multiple punishment and his due process rights.

Penal Code section 654 states in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ." █ The section applies to penal provisions of other codes despite its apparent limitation to "this" Penal Code. (*People* v. *Smith* (1984) 155 Cal.App.3d 1103, 1153 [203 Cal.Rptr. 196].)

Penal Code section 15 defines "punishments" or penal sanctions as:

"A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments:

"1.  Death;

"2.  Imprisonment;

"3.  Fine;

"4.  Removal from office; or

"5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State."

■ A license suspension is not among the punishments listed in Penal Code section 15 and thus is not a penal sanction within the meaning of Penal Code section 654.

Further, Penal Code section 9 provides: "The omission to specify . . . in this Code any . . . penalty . . . or other remedy imposed by law and allowed to be recovered or enforced in any civil action or proceeding, for any act or omission declared punishable herein, does not affect any right to recover or enforce the same." The administrative per se suspension of driving privileges "is a civil matter which is independent of the determination of the person's guilt or innocence . . . in the criminal proceeding." (§ 13353.2, subd. (e).)

*People* v. *Smith, supra,* 155 Cal.App. 1103 and *People* v. *Morris* (1965) 237 Cal.App.2d 773 [47 Cal.Rptr. 253], on which Fearn relies, are inapposite. Both cases address whether multiple punishments can be imposed when defendant's single act constitutes more than one offense. That is not the case here. As a result of his driving with a BAC greater than .08 percent, Fearn was convicted of one offense but is subject to both the criminal and administrative consequences of his act. The criminal punishment and administrative sanctions which are imposed on a person convicted of drunk driving serve a different purpose. (*Sanchez* v. *Alexis* (1982) 131 Cal.App.3d 709, 715 [182 Cal.Rptr. 593]; cf. *Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 282 [5 Cal.Rptr. 668, 353 P.2d 276].) Both are authorized by Penal Code section 9.

That the DMV is responsible for enforcing both the administrative and the criminal licensure suspensions is immaterial. Regardless of the enforcing agency, one suspension is a criminal penalty involving a court order and the other is an administrative sanction. Therefore, Penal Code section 654 does not preclude the imposition of separate driver's license suspensions by the court and the DMV.

■ By parity of reasoning, the state does not violate due process by imposing both criminal and civil penalties for the same act or omission. (*Peretto* v. *Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 462 [1 Cal.Rptr.2d 392], citing *United States* v. *Ward* (1980) 448 U.S. 242, 250 [65 L.Ed.2d 742, 750, 100 S.Ct. 2636].) Fearn's reliance on *Walsh* v. *Kirby* (1974) 13 Cal.3d 95 [118 Cal.Rptr. 1, 529 P.2d 33] and *Cohan* v. *Department of Alcoholic Bev. Control* (1978) 76 Cal.App.3d 905 [143 Cal.Rptr. 199], is misplaced. In *Walsh* v. *Kirby*, the Department of Alcoholic Beverage Control

assessed penalties against a retail liquor licensee for 10 sales of distilled spirits at less than the established minimum retail prices in violation of the Alcoholic Beverage Control Act. The purpose of the penalty provision of the act was to compel compliance with the fair trade practices enacted by the Legislature. The statute was intended to serve as a notice or warning by providing a relatively light penalty for the initial violation with the threat of more severe penalties should the licensee thereafter fail to conform. (13 Cal.3d at pp. 98-99, 102.) The court held that the department's practice of withholding notice while the licensee was afforded an opportunity to engage in a series of violations defeated the purpose of the law. Moreover, the subsequent imposition of cumulative penalties which resulted in a de facto revocation of his license was contrary to the purposes of the act, was arbitrary and capricious in light of those purposes, and constituted a denial of due process of law. (13 Cal.3d at pp. 103-104.)

Walsh is clearly distinguishable from this case. In enacting the administrative per se statutes in light of the preexisting second-offender probation laws, the Legislature contemplated two essentially independent proceedings —one criminal and one administrative—to address the strong public concern regarding the drunk driver and safety on the highways. Rather than defeating the purpose of the underlying statutes, imposition of separate suspensions under each proceeding fosters their independent purposes. (*Robertson* v. *Department of Motor Vehicles, supra,* 7 Cal.App.4th at pp. 947-948.) Thus, unlike the department's imposition of penalties in *Walsh,* the DMV's suspension of Fearn's license was not contrary to the purposes of the administrative per se laws and did not constitute a denial of due process.

In *Cohan* v. *Department of Alcoholic Bev. Control, supra,* 76 Cal.App.3d 905, the court held it was a denial of due process to multiply the grounds for discipline by imposing a condition on a license which duplicated a department rule and then separately penalizing the licensee with a suspension for each violation. (*Id.* at pp. 908, 911.) The court's holding was based on its conclusion the department had no statutory authority to impose multiple penalties for conduct which violated both a condition and a rule. (*Id.* at p. 910.) To the contrary in this case, the Legislature expressly provided for both criminal and administrative penalties for those who drive under the influence of alcohol. Thus, the imposition of both administrative and criminal licensure suspensions in Fearn's case did not violate his due process rights.

## Disposition

The judgment is reversed, and the matter is remanded to the trial court for further proceedings, if appropriate, and for reconsideration and disposition not inconsistent with the views expressed in this opinion.

Vartabedian, J., and Brown (G. A.), J.,* concurred.

Respondent's petition for review by the Supreme Court was denied December 30, 1992. Panelli, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.