[No. A054047. First Dist., Div. Three. June 25, 1992.]

LARRY ROBERTSON, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, José R. Guerrero and Kim M. Settles, Deputy Attorneys General, for Defendant and Appellant.

Russell & Russell and Kent A. Russell for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—This case raises the issue of whether there is a conflict in the drunk driving provisions of the Vehicle Code[1] between recently enacted administrative per se laws mandating the suspension of driving privileges of second offenders for a period of one year (§§ 13353.2 & 13353.3, subd. (b)(2)) and preexisting second-offender probation statutes providing for a restricted driver's license (§§ 23165, 23166, 13352, subd. (a)(3), & 13352.5, subd. (a)). Contending that there is such a conflict, Larry Robertson petitioned the superior court for a writ of mandate to set aside an order of the Department of Motor Vehicles (DMV) suspending his driver's license for one year. The petition was granted. The DMV appeals from the superior court judgment granting the petition. We reverse the judgment and direct the superior court to deny the petition.

### STATUS OF THE LAW

Prior to 1990, a person's privilege to operate a motor vehicle could be suspended or revoked if he or she was convicted of driving while under the influence of an alcoholic beverage, any drug, or both; driving with an

---

[1]All statutory references are to the Vehicle Code unless otherwise indicated.

excessive blood-alcohol concentration or driving while addicted; or if the person refused to submit to chemical testing of his or her blood, breath, or urine after arrest for these offenses. (§§ 23152, 23153 & 13353.) The period of the suspension or revocation was enhanced if the person had suffered prior convictions for the same offenses, involving separate incidents, within the previous seven-year period. (§ 13352.) The actual act of license suspension or revocation was generally carried out by the DMV upon receipt of a duly certified abstract of judgment from a court; or, in the case where the person refused to submit to chemical testing, upon receipt of the arresting officer's sworn statement that the officer had reasonable cause to believe that the person was driving while under the influence of alcohol or drugs and that he or she refused to submit to a chemical test. (§§ 13352 & 13353.)

As specifically pertains to second offenders, a period of suspension of 18 months was prescribed by sections 23165 and 13352, subdivision (a)(3), unless the court granted probation with conditions as outlined by section 23166, subdivision (b). When probation was granted with the requisite conditions, the second offender's driving privileges were restricted rather than suspended. He or she was restricted to necessary travel to and from his or her place of employment, to and from a drug treatment program, and if driving a motor vehicle was necessary to perform the duties of his or her employment, driving within his or her scope of employment. The granting of probation pursuant to section 23166, subdivision (b), actually precluded the DMV from suspending the second offender's driving privileges on the basis of his conviction. (§ 13352.5, subd. (a).)

In 1990 the situation effectively changed. While the statutory scheme outlined above essentially remained intact, another series of provisions was added to the drunk driving statutes. Principal among these provisions is section 13353.2 which mandates that the DMV "immediately" suspend the driving privilege of anyone who is found to have operated a vehicle while his or her blood-alcohol level was .10 percent or more.[2] Under this statute, once a driver is pulled over by a police officer and arrested for drunk driving on the basis of blood-alcohol findings, the DMV is now required to immediately serve notice on the driver that his or her driver's license is administratively suspended. No longer is license suspension dependent on the ultimate conviction of the driver.

In keeping with section 13353.2, other key provisions in the newly enacted laws, commonly referred to as the administrative per se laws, are aimed at safeguarding the driver's rights of due process. Once it has been

[2]In 1990, the legislation was amended to lower the required blood-alcohol level to .08 percent.

determined that the driver has a blood-alcohol level in excess of the legal limit, the arresting officer or the DMV must serve the driver with a notice of order of administrative suspension effective 45 days from the date of service. That notice must include the reason and statutory grounds for the suspension, the right to request an administrative hearing, and the date when a request must be made to receive a determination prior to the effective date of the suspension. (§§ 13353.2, subds. (b) & (c), 13353.3, subd. (a), 23158.5, subd. (a).) If no hearing is requested, the suspension becomes effective upon the date specified in the notice, after the DMV determines the facts on the basis of the officer's report. (§§ 13353.2, subds. (a), (d), 13353.3, subd. (a), 13557.) Where a hearing is requested in a timely fashion, it must be held before the effective date of the order of suspension. (§ 13558, subd. (d).) Issues to be decided at the hearing are limited to whether the officer had reasonable cause to believe the driver had been driving the vehicle in violation of section 23152 or 23153; whether the driver was placed under arrest; and whether the driver was driving or in actual control of a motor vehicle when he or she had .10 (now .08) percent or more, by weight, of alcohol in his or her blood. (§§ 13558, subds. (a) & (c)(2), 14100 et seq.) The DMV's determination is subject to a petition for judicial review. (§ 13559.)[3]

The periods of suspension occasioned by a section 13353.2 finding are set forth in section 13353.3. As with the preexisting criminal statutes, there is an enhancement for repeat offenders.[4] Under section 13353.3, subdivision (b), the driving privileges of people in this category are administratively suspended for a full year. The driving privileges of first-time offenders, meanwhile, are suspended for four months.

As a consequence we have two processes which are generally triggered when a driver is detained for drunk driving. One involves court proceedings and is criminal in nature; the other involves administrative proceedings and is civil in nature. How the two processes interrelate is the issue to be resolved in this appeal.

## FACTUAL AND PROCEDURAL HISTORY

On August 31, 1990, petitioner in this case, Robertson, was arrested by a California Highway Patrol officer for drunk driving. A chemical test revealed

---

[3]This provision for administrative hearing and review was also made applicable to the preexisting suspension provision for refusal to submit to a chemical test. (§ 13353.)

[4]Under these newer statutes, a repeat offender is someone who, in the previous seven years, has suffered prior convictions for drunk-driving-related offenses or prior administrative determinations either that they refused chemical testing or were driving with an excessive concentration of alcohol.

a blood-alcohol content of .14 percent. The record indicates that Robertson was served the same day with an administrative per se order of suspension.

Thereafter, a misdemeanor complaint was filed in municipal court charging Robertson with one count of driving while intoxicated (§ 23152, subd. (a)) and one count of driving with a blood-alcohol content in excess of .08 percent (§ 23152, subd. (b)). Additionally, it was alleged that he had suffered a conviction under the same statute in 1984. Representing himself at trial, Robertson pled guilty to the second count of driving with a blood-alcohol content in excess of .08 percent and admitted the prior conviction. The municipal court then placed him on probation with conditions applicable to a second offender pursuant to sections 23165 and 23166, subdivision (b). These conditions included payment of a fine, confinement in the county jail and attendance at a drinking driver's program (DDP). The court further restricted Robertson's driver's license for 18 months to travel to and from work, to and from jail, and to and from the DDP.

Subsequent to the criminal proceedings, a hearing was held at the DMV on the administrative per se order of suspension. Here, Robertson was represented by counsel. He stipulated to the lawfulness of the arrest and to a blood-alcohol content of .08 percent or higher. Nevertheless, he opposed suspension of his license based on an alleged conflict between the recently enacted administrative per se laws mandating a one-year suspension for second offenders and preexisting second-offender probation statutes. Robertson maintained that since the Legislature had left the probation statutes on the books, these statutes should govern in case of any conflict. He claimed that his plea of guilty in the criminal proceedings was part of a plea bargain and that he was told that his driving privilege would be restricted only. For the DMV to order suspension now, he argued, would violate his rights of due process. Robertson argued that suspension would make it impossible for him to comply with that part of the court's order requiring him to appear at the county jail and to attend a drug treatment program. He maintained that an order of suspension would be an infringement on the trial court's discretion in issuing its order of probation and, hence, a violation of the doctrine of the separation of powers. Finally, Robertson claimed that suspension would deprive him of his livelihood since he was a traveling salesman.

Following this, the DMV hearing officer issued his decision upholding the order of suspension. As part of that decision, he made the requisite findings under the law: that the police officer who arrested Robertson had had reasonable cause to believe that Robertson was driving under the influence of alcohol; that the arrest was lawful; and that Robertson had been driving with a blood-alcohol content of over .08 percent. On the basis of these

findings, the hearing officer held that the per se order of suspension was both proper and mandated.

Thereafter, Robertson filed the instant petition for a writ of mandate with the superior court and an application for an immediate stay of the DMV decision. The application for the stay was granted and a hearing was then held on the petition. Robertson raised the same arguments before the court as he had before the DMV. The petition was opposed by the DMV. Following the hearing, the superior court granted the petition, finding that there was a conflict in the drunk driving statutes and that Robertson was entitled to the benefit of any reasonable doubt in the construction of these provisions. The court held that a strict application of the administrative per se laws in the case of second offenders would render the preexisting probation statutes "superfluous." At the same time, the court rejected Robertson's constitutional challenge to the new laws in light of their presumptive validity and its own interpretation of the statutes. The court ordered the DMV to vacate its suspension order and to reinstate the license restriction imposed by the municipal court as a condition of the grant of probation in the related criminal action. This appeal followed.

## RECONCILIATION OF CRIMINAL AND ADMINISTRATIVE PROCEEDINGS

 Is there a conflict between the administrative per se laws and preexisting second-offender probation statutes? Before addressing this issue, a review of some well-established principles of statutory construction is in order as well as the pertinent statutes themselves.

 "The fundamental rule is that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] '[A] construction making some words surplusage is to be avoided.' [Citation.] When used in a statute words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear, and the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.] In addition, we consider the legislative history of the statute as well as the historical circumstances of its enactment in determining the intent of the Legislature. [Citation.]" (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].)

 The second-offender probation statutes which are at issue here and which predate the administrative per se laws are sections 23165, 23166,

subdivision (b), 13352, subdivision (a)(3), and 13352.5, subdivision (a). Of the four provisions, the first two govern the court's actions while the latter two govern the actions of the DMV. Section 23165 provides in pertinent part, "If any person is convicted of a violation of Section 23152 [i.e., driving under the influence] and the offense occurred within seven years of a separate violation of [the same offense], which resulted in a conviction, that person shall be punished by imprisonment in the county jail for not less than 90 days nor more than one year and by a fine of not less than . . . ($390) nor more than . . . ($1,000). The person's privilege to operate a motor vehicle shall be suspended by the [DMV] pursuant to paragraph (3) of subdivision (a) of Section 13352."

Section 23166, subdivision (b), on the other hand, provides the court with an alternative to suspending the person's driving privilege. Under this statute, the court can place the second offender on probation so long as the following conditions are included: (1) confinement in the county jail for at least 48 hours, but not more than one year; (2) payment of a fine of at least $390, but not more than $1,000; (3) restriction of the person's driver's license for one year to necessary travel to and from that person's place of employment, to and from a court-ordered drug treatment program, and if driving a motor vehicle is necessary to perform the duties of the person's employment, driving in that person's scope of employment; and (4) participation in either an 18- or 30-month drug treatment program as described by the statute.

In sync with these court-related procedures, sections 13352, subdivision (a)(3), and 13352.5, subdivision (a), make provision for the DMV to carry out the directive of the court.

The recently enacted administrative per se statutes with which we are concerned, and which are said to be in conflict with the above provisions are sections 13353.2, subdivision (a), and 13353.3, subdivision (b)(2). As previously noted, section 13353.2, subdivision (a), mandates the DMV to "immediately" suspend the driving privilege of any person arrested for operating a vehicle with a blood-alcohol level above the legal limit. And section 13353.3, subdivision (b)(2), states that if the person has, within the previous seven-year period, suffered a prior conviction for drunk-driving-related offenses, his or her driving privilege "shall" be suspended for one year.

At first blush, it may appear that there is a conflict in these laws. The earlier statutes make it clear that if, in the criminal proceeding, the court puts the second offender on probation with the requisite conditions, the second

offender's driving privilege is to be *restricted*, not suspended. The DMV, in fact, is barred from suspending the driver's driving license within the framework of these statutes. On the other hand, the new administrative per se provisions state just as clearly that when it is administratively determined that the driver has been driving with a blood-alcohol content of .08 percent or more and he or she is a second offender, the driver's driving license must be *suspended* for a year.

However, it is important to keep in mind that these laws were not created in a vacuum. They are part of a legislative scheme and must be viewed in this context. When looking at the drunk driving statutes as a whole, it is apparent that the Legislature knew it was enacting two processes to oversee the problem. In several of the newer provisions, in fact, the Legislature has indicated how it intends for the two processes to interrelate. A look at these provisions will assist us in resolving the issue before us.

In section 13353.2, subdivision (e), as an example, the Legislature attempts to accommodate the difference in the nature of the two processes. The statute provides that the administrative determination that the driver was driving with a blood-alcohol content of at least .08 percent "is a civil matter which is independent of the determination of the person's guilt or innocence, shall have no collateral estoppel effect on a subsequent criminal prosecution, and shall not preclude the litigation of the same or similar facts in the criminal proceeding." If a person is acquitted of criminal charges in a given case, on the other hand, the statute states that "the department shall immediately reinstate the person's privilege to operate a motor vehicle if the department has suspended it administratively . . . and the department shall return or reissue for the remaining term any driver's license which has been taken from the person . . . ."

In sections 13353.3, subdivision (c), and 13354, meanwhile, the Legislature addresses an issue which is likely to arise in many of these cases—i.e., what do you do when both processes have been initiated in a given case and there are two resulting dispositions? The former provision states that where a person's driving privilege is revoked or suspended based on a conviction for drunk driving and is also administratively suspended because the person was determined to have been driving with a blood-alcohol level in excess of .08 percent, both actions arising from the same occurrence, "both the suspension under Section 13353.2 and the suspension or revocation under Section 13352 shall be imposed, except that . . . the periods of suspension or revocation shall run concurrently, and the total period of suspension or revocation shall not exceed the longer of the two suspension or revocation periods."

At the same time, section 13354 provides that where the court orders the suspension, revocation or restriction in the criminal matter to run consecutively to the administrative suspension, the dispositions are to be "cumulative and shall be imposed consecutively." (§ 13354, subd. (c).) It then indicates the order the dispositions should take (the administrative suspension first if such a disposition is already in effect at the time of the court order; or the court-ordered restriction, suspension, or revocation first if such a disposition is already in effect at the time the administrative suspension becomes effective). (§ 13354, subds. (a) and (b).)

Finally, in section 13353.7 the Legislature sheds some light on its intention regarding second offenders as well. This provision, in essence, provides an exception to the mandatory administrative suspension rule for first offenders who enroll in an alcohol and drug educational program as described in another section. Notably, it specifically excludes second offenders from the same treatment. It states, "This section does not apply to a person whose driving privilege has been suspended or revoked pursuant to the order of the court or Section 13353 or 13353.2 for an offense which occurred on a separate occasion, or as a result of a conviction of a separate violation of Section 23103, as specified in Section 23103.5, Section 23152, or Section 23153, which violation occurred within seven years of the offense in question." Further, it indicates that this exclusion of second offenders shall be operative "so long as a one-year suspension of the driving privilege for a second or subsequent occurrence or offense, with no restricted or hardship licenses permitted, is required by Section 408 or 410 of Title 23 of the United States Code." (Sections 408 and 410 of title 23 state the prerequisites for states to receive federal grant monies for the establishment of alcohol and drug educational programs.)

Based on the above, we conclude that the Legislature, in enacting these statutes, contemplated two processes—one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature; and that these processes are, for the most part, intended to operate independently of each other and to provide for different dispositions. At times, these dispositions will lead to dual periods of license suspension, revocation or restriction. Sometimes these dual periods will run concurrently with each other; at other times one period will run consecutively to the other.

We further conclude that in the case of a second offender, such as Robertson, the Legislature intended for there to be an immediate suspension of driving privileges for at least one year. How this period of suspension is to tie in with the criminal disposition in the case is the real question. Having assessed the pertinent statutes and the legislative intent expressed therein, we

have determined that the 2 dispositions should run concurrently with each other as follows: 12 of the 18 months of probation and license restriction are to run concurrently with the 12-month administrative suspension, with suspension being the "controlling" disposition during this period. This is appropriate both because the Legislature has called for the suspension to be "immediate" and because as between the two dispositions, suspension and restriction, suspension represents the greater penalty in that it is the complete denial of driving privileges. Then, at the conclusion of the one-year "suspended" term, the remaining six-month portion of the eighteen-month restricted term shall continue to run.

We find added support for resolving the case in this way in the Legislature's own stated purpose for enacting these laws: "To provide safety for all persons using the highways of this state by quickly suspending the driving privilege of those persons who have shown themselves to be safety hazards by driving with an excessive concentration of alcohol in their bodies." (Stats. 1989, ch. 1460, § 1.) It is the summary and mandatory character of the administrative per se laws requiring "immediate" suspension of driving privileges which is the key to the Legislature's attempt at improving the safety of the highways.

## DUE PROCESS

It will be remembered that in his petition for writ of mandate, Robertson challenged the subject statutes on certain constitutional grounds as well. He maintained that the administrative suspension of his license was in violation of his rights of due process in that he had entered a plea of guilty in the related criminal proceedings with the understanding that his license would be restricted, not suspended. He further argued that the administrative per se laws violated the separation of powers doctrine because they intruded on the trial court's discretion in sentencing. We find these arguments unpersuasive.[5]

■ Robertson's due process argument is essentially that he did not know that his license could be administratively suspended following the court's order of probation. He states that in entering his plea, he relied on the court's statements that his driving privilege would be restricted only. This argument, however, is not supported by the evidence.

The record in the case establishes that Robertson received notice of administrative suspension on the day of his arrest. The police officer who

---

[5]The constitutionality of the administrative per se statutes, in general, has previously been upheld by this court. (See *Peretto* v. *Department of Motor Vehicles* (1991) 235 Cal.App.3d 449 [1 Cal.Rptr.2d 392].)

arrested him served him with such notice, confiscated his driving license, and then issued him a temporary license. The notice clearly informed Robertson that the suspension was an administrative one by the DMV. It instructed him to telephone the DMV if he had any questions regarding the suspension or if he wanted to request a hearing. If he wanted to request a hearing, the notice specified that the request had to be made within 10 days, or, in other words, by September 10, 1990. Based on the fact that such a hearing eventually took place, it is apparent that Robertson read the notice and requested the hearing prior to the deadline of September 10. The criminal proceedings in the case, meanwhile, did not occur until September 26, 1990. Thus, at the time he entered his plea at the criminal proceedings, Robertson knew that the administrative matter was, as yet, unsettled and pending.

In addition to this, the temporary license issued to Robertson apparently contained a full explanation of the prohibition of a restricted license for second offenders. Accordingly, on the basis of all of this evidence, we reject Robertson's claim that he did not have notice of the fact that his license could be suspended following the court's action.

As to Robertson's other contention that the new laws intrude on the trial court's discretion in sentencing, this is unfounded as well. As already explained, the statutes set up two processes, one court-related and one administrative. The processes are for the most part independent of each other and nonintrusive.

## DISPOSITION

We reverse the judgment and remand the case to the superior court with directions to dissolve the stay, to deny Robertson's petition for writ of mandate and to reinstate the DMV order of suspension. The DMV shall recover its costs on appeal.

White, P. J., and Chin, J., concurred.