[No. D047088. Fourth Dist., Div. One. June 13, 2006.]

JOHN GREENWOOD BRIERTON, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**Counsel**

John Greenwood Brierton, in pro. per.; and Alex L. Landon for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Jacob A. Appelsmith, Chief Assistant Attorney General, and Chris A. Knudsen, Deputy Attorney General, for Defendant and Respondent.

**Opinion**

**AARON, J.—**

## I.

## INTRODUCTION

Appellant John Greenwood Brierton appeals the denial of his petition for a writ of mandate seeking to prevent the Department of Motor Vehicles (DMV)

from enforcing an April 22, 2005 order of suspension against him. Brierton contends that the DMV's suspension of his driver's license under Vehicle Code[1] section 13352, subdivision (a)(3), which requires the DMV to suspend for two years the driving privileges of any person who suffers two alcohol-related driving offense convictions within 10 years, violates the separation of powers doctrine because it imposes a term of suspension different from the suspension the trial court imposed in Brierton's criminal case. According to Brierton, by allowing the DMV to suspend his license for two years,[2] the Legislature has usurped the sentencing discretion of the trial court. We reject this contention and affirm the trial court's denial of Brierton's petition for a writ of mandate.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*

#### 1. *Brierton's July 2003 arrest*

On July 30, 2003, a San Diego State University Police Department officer saw Brierton accelerate his vehicle and lose traction for approximately 20 feet. The officer stopped Brierton and observed that Brierton exhibited a number of symptoms indicating that he was intoxicated, including bloodshot and watery eyes, an unsteady gait, and slurred speech. The officer also detected the odor of alcohol. The officer arrested Brierton for driving while intoxicated. Chemical test results indicated that Brierton had been driving with a blood-alcohol content of 0.15 percent.

After an administrative hearing in September 2003, the DMV suspended Brierton's driving privilege under the administrative per se provisions[3] of the Vehicle Code for driving with a prohibited blood-alcohol content.

---

[1] Further statutory references are to the Vehicle Code.

[2] Under the DMV's administrative sanction, after serving one year of the two-year suspension, Brierton may apply for a restricted license that would allow him to drive a vehicle equipped with an ignition interlock device if, among other requirements, he enrolls in one of the mandated driving under the influence programs. (See § 13352, subd. (a)(3)(A), (B), (D).) Brierton challenges both the two-year suspension as well as the alternative one-year suspension plus ignition interlock device condition as improper because under either scenario, his driving privilege would be restricted beyond the time it would be restricted by the trial court's sentence. However, for ease of discussion, we will refer to the sanction Brierton challenges by way of his writ petition as the default two-year suspension.

[3] Under the administrative per se provisions of the Vehicle Code, the DMV "must immediately suspend the driver's license of a person who is driving with .08 percent or more, by weight, of alcohol in his or her blood." (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155 [8 Cal.Rptr.3d 48, 81 P.3d 975] (*MacDonald*), citing § 13353.2, subd. (a)(1).) "The procedure is

## 2. *Brierton's October 2004 arrest*

On October 28, 2004, two officers from the San Diego Police Department were walking across 30th Street when they observed Brierton's car approaching. Officer Trevor Riley shined his flashlight in the direction of the car to indicate his presence, but Brierton continued to drive toward the officers without slowing down. The officers had to run between parked cars to avoid being struck by Brierton's car. Officer Riley yelled for Brierton to stop, but Brierton failed to do so. The officer noted the car's license plate number, got into his patrol car, and effected a traffic stop.

Officer Riley noticed that Brierton had a blank stare and that he was slow to respond to instructions. Brierton said he had not seen the officers in the street. Brierton failed to successfully complete a series of field sobriety tests. Officer Riley transported Brierton to San Diego Police Department headquarters where he administered a breath test. The breath test established that Brierton had been driving with a blood-alcohol content of 0.15 percent.

The DMV again administratively suspended Brierton's driving privilege under the administrative per se provisions for a period of one year, beginning January 19, 2005, and ending January 18, 2006. Brierton was represented by counsel at the administrative hearing.

## 3. *Brierton's criminal convictions*

The state criminally prosecuted Brierton for both the July 2003 and the October 2004 offenses. In March 2005, Brierton pled guilty to a violation of sections 23103, subdivision (a) and 23103.5—alcohol-related reckless driving—for the July 2003 incident. At the same time, Brierton pled guilty to a violation of section 23152, subdivision (b) for driving with a blood-alcohol content of 0.08 percent or greater, relating to the October 2004 incident.

As part of Brierton's sentence in the criminal cases, the trial court imposed fines, required Brierton to complete a multiple conviction education/rehabilitation program, and ordered a one-year license suspension for the violation of section 23103 and a 90-day license suspension for the violation of section 23152, subdivision (b). The court indicated that Brierton's suspensions should run concurrently with "any DMV suspension/action."

---

called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration, without additional evidence of impairment. [Citation.]" (*MacDonald, supra,* 32 Cal.4th at p. 155.) No criminal conviction is required as a predicate to an administrative per se suspension.

As part of his guilty plea, Brierton signed a form entitled, "DUI [Driving Under the Influence] Addendum" for each of his two convictions. Paragraph 5 of the form provides: "The Department of Motor Vehicles (DMV) may consider any of my other convictions for driving under the influence or reckless driving, even those that are not charged in this proceeding, and impose a more severe license restriction, suspension, or revocation as a result of such other conviction(s)." Paragraph 8 provides: "The DMV may restrict, suspend, or revoke my license under a procedure which is separate from this criminal action. The DMV's action, if any, will be in addition to the Court's sentence and I must obey it. The DMV may not authorize a restricted license even if the Court might so direct."

In addition to signing the form, Brierton initialed the boxes next to paragraphs 5 and 8, indicating that he had read and understood the contents of both paragraphs.

### 4. The DMV's administrative suspension of Brierton's driving privilege as a result of his two criminal convictions

In April 2005, the DMV sent a letter to Brierton advising him that it was administratively suspending his driving privileges for two years pursuant to section 13352, subdivision (a)(3).[4] The letter explained that the DMV was taking this action due to Brierton's convictions of March 3, 2005, in

---

[4] At the time Brierton was convicted, section 13352 provided in pertinent part: "(a) The department shall immediately suspend or revoke, or record the court-administered suspension or revocation of, the privilege of a person to operate a motor vehicle upon the receipt of an abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 or 23153 or subdivision (a) of Section 23109, or upon the receipt of a report of a judge of the juvenile court, a juvenile hearing officer, or a referee of a juvenile court showing that the person has been found to have committed a violation of Section 23152 or 23153 or subdivision (a) of Section 23109. If any offense specified in this section occurs in a vehicle defined in Section 15210, the suspension or revocation specified below shall apply to the noncommercial driving privilege. The commercial driving privilege shall be disqualified as specified in Sections 15300 to 15302, inclusive. For the purposes of this section, suspension or revocation shall be as follows: [¶] . . . [¶] (3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of Section 23152 punishable under Section 23540, the privilege shall be suspended for two years. The privilege may not be reinstated until the person gives proof of financial responsibility and gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code as described in Section 23542. For the purposes of this paragraph, enrollment, participation, and completion of an approved program shall be subsequent to the date of the current violation. Credit shall not be given to any program activities completed prior to the date of the current violation. The department shall advise the person that after completion of 12 months of the suspension period, the person may apply to the department for a restricted driver's license . . . ." (Stats. 2004, ch. 595, § 1.4.) Brierton's only argument on appeal is that former sections 13352 and/or 23540, as applied in this case, violate the separation of powers doctrine. Brierton raises no statutory argument.

case Nos. M903034 and M944571. It also informed Brierton that after one year of the suspension, he could apply for a license that would permit him to operate vehicles equipped with an ignition interlock device.

### B. *Procedural background*

On May 23, 2005, Brierton filed a petition for writ of mandate in the San Diego Superior Court. Brierton challenged the DMV's April 2005 administrative suspension order. He argued that the suspension order was inconsistent with the criminal court's sentencing order and was thus unconstitutional. The DMV responded, contending that an administrative suspension independent of a criminal proceeding is constitutional. The trial court denied Brierton's petition for a writ of mandate on August 15, 2005.

On August 26, 2005, Brierton timely appealed the denial of his petition.

### III.

### DISCUSSION

Brierton asserts that his suspension under former section 13352, subdivision (a)(3), is unconstitutional because the DMV has imposed a more stringent license suspension than that imposed by the trial court. Brierton contends that by granting the DMV the power to suspend his driving privilege based solely on the fact that he incurred two alcohol-related driving convictions, the Legislature has usurped the power of the trial court to impose its sentence. He claims that "[t]o the extent these statutes countermand the sentencing orders of the judicial officer in Mr. Brierton's case, they are unconstitutional infringements on the judicial power, under the Separation of Powers doctrine."

Brierton raises questions of law, which we review de novo. (*Alford v. Department of Motor Vehicles* (2000) 79 Cal.App.4th 560, 564 [94 Cal.Rptr.2d 222].)

### A. *Separation of powers*

The California Constitution establishes a system of state government in which governmental power is divided among three coequal branches: the legislative branch (Cal. Const., art. IV, § 1), the executive branch (Cal. Const., art. V, § 1), and the judicial branch (Cal. Const., art. VI, § 1). The Constitution provides that those charged with the exercise of one power may not exercise any other. (Cal. Const., art. III, § 3.)

"The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch. [Citations.]" (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297 [105 Cal.Rptr.2d 636, 20 P.3d 533].) However, "[t]he doctrine . . . recognizes that the three branches of government are interdependent, and it permits actions of one branch that may 'significantly affect those of another branch.' [Citation.]" (*Id.* at p. 298.) Thus, "the separation of powers doctrine is violated only when the actions of a branch of government defeat or materially impair the inherent functions of another branch." (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662 [128 Cal.Rptr.2d 104, 59 P.3d 174].)

## B. *Analysis*

Brierton does not dispute that he has suffered two convictions for driving under the influence of alcohol, and thus, that he falls squarely within the scope of former section 13352, subdivision (a)(3). He also does not dispute that section 13352, subdivision (a)(3), *requires* the DMV to impose a two-year license suspension in situations such as his. He contends, however, that the DMV's imposition of the mandatory suspension is an unconstitutional violation of the separation of powers doctrine because it usurps the trial court's power to sentence him to a one-year license suspension for his criminal convictions. He maintains that the power to sentence a criminal defendant rests solely with the judicial branch, and that the DMV's conflicting suspension based solely on his criminal convictions has "thwart[ed]" the trial court's penal sanction. We disagree with Brierton's contentions.[5]

---

[5] At oral argument, Brierton's attorney suggested that the Legislature has recently amended section 13352 to prevent the court and the DMV from ordering separate suspensions based on the same conviction, and that this change in the law would avoid the separation of powers issue he raises in this appeal. Our review of the history of section 13352 establishes that in addition to a number of technical and minor substantive amendments that have occurred since March 2005 (when Brierton was convicted), the Legislature removed the words "or record the court-administered suspension or revocation of" from the beginning of subdivision (a), effective September 20, 2005. Although it is not clear from counsel's remarks at oral argument, we presume that this is the change to which counsel referred in arguing that there is no longer the potential for the court and the DMV to impose separate license suspensions based on the same conviction.

We do not interpret this amendment as effecting the change Brierton suggests. Courts remain empowered to impose driver's license suspensions separate from DMV suspensions in a variety of contexts. For example, in this case, the court suspended Brierton's license for one year pursuant to section 13202.5, for his violation of section 23103, subdivision (a). Section 13202.5, subdivision (a) provides, in pertinent part: "For each conviction of a person for any offense specified in subdivision (d), committed while the person was under the age of 21 years, but 13 years of age or older, the court shall suspend the person's driving privilege for one year." This statute has not been amended subsequent to Brierton's guilty plea. Thus, even if Brierton's convictions occurred today, he would still face a court-imposed suspension, as well as a separate DMV suspension. This issue is generally irrelevant to the disposition of

■ What Brierton fails to acknowledge is that the DMV's suspension of his driving privilege under section 13352, subdivision (a)(3), is substantively distinct from any punishment a court may impose as a result of a criminal conviction. "In numerous instances under provisions of California law, a criminal conviction may give rise to a variety of collateral consequences." (*Larsen v. Department of Motor Vehicles* (1995) 12 Cal.4th 278, 283 [48 Cal.Rptr.2d 151, 906 P.2d 1306].) "A conviction . . . may have consequences outside the criminal context, and, for example, may provide a basis for the suspension or revocation of a license or other benefit that the state has granted to the convicted individual." (*Ibid.*, citing § 13352, subd. (a)(1); Bus. & Prof. Code, §§ 490, 10177, subd. (b); Ed. Code, § 44424.)

Brierton claims that "the DMV's order would defeat or materially impair the Court's exercise of its constitutional function to resolve the controversy relating to the misdemeanor charges against Mr. Brierton, between the prosecutor on behalf of the People of the State of California, and Mr. Brierton." Brierton's suggestion that the DMV's mandatory suspension under section 13352, subdivision (a)(3) intrudes on the ability of the trial court to resolve the criminal charges against a defendant is simply incorrect. The DMV's duty to impose a suspension pursuant to section 13352 is triggered only *after* the trial court has resolved the controversy between the state and the defendant. It is the fact of the conviction—which represents the resolution of the criminal controversy—that forms the basis of the DMV's administrative duty under section 13352. Contrary to Brierton's suggestion on appeal, the fact that a criminal conviction may invoke collateral consequences does not mean that the administrator of those collateral consequences has in any way defeated or materially impaired the function of the court.

■ To the extent Brierton contends that the DMV's mandatory suspension "thwarts" the trial court's discretion to sentence a defendant because it may involve a term of suspension longer than that imposed by the trial court, we disagree. The DMV's two-year suspension, imposed pursuant to section 13352, is an administrative civil sanction that is independent of the trial court's penal sanction expressed by the court's criminal sentence, and serves

---

Brierton's appeal, however, since we conclude that a statutory scheme that authorizes both the court and the DMV to impose separate, and possibly different, license suspensions does not violate the separation of powers doctrine.

Because there has been no substantive change to section 13352, subdivision (a)(3)'s requirement that the DMV suspend a driver's license for two years in the case of dual alcohol-related driving convictions—the DMV action Brierton challenges in this case—from the time of Brierton's convictions to the present, we will not differentiate between the version of section 13352 in effect in March 2005 and the present version. This practice is consistent with the parties' briefing on appeal.

different interests.[6] "The suspension imposed by the [DMV] is an administrative remedy devised by the Legislature, based on compelling public policy considerations." (*Corley v. Department of Motor Vehicles* (1990) 222 Cal.App.3d 72, 78 [271 Cal.Rptr. 406] (*Corley*).) The purpose of the administrative license provisions is to protect others from the possibility of the drunk driver's future harmful conduct, rather than to punish him for his past offenses: "The thrust of the legislative concern under Vehicle Code section 13352 remains . . . protection of the public from drivers whose prior conduct demonstrates they cannot currently be trusted with a license to drive." (*Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 380–381 [211 Cal.Rptr. 748, 696 P.2d 141] (*Pollack*).)

Courts have repeatedly noted the difference between the DMV's power to impose an administrative suspension and the power of the trial courts to impose a penal sanction. (See *Larsen v. Department of Motor Vehicles, supra,* 12 Cal.4th at p. 286, fn. 6 [citing multiple cases in which the DMV's suspension of license is a sanction that is civil and not penal].) " 'Both the court in which a person is convicted of driving while under the influence of intoxicating liquor and the [DMV] have statutory powers with respect to suspension [or revocation] of the operator's license of the person convicted.' [Citation.] As we explained in *Robertson v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 938, 947 [9 Cal.Rptr.2d 319] [(*Robertson*)], the legislative scheme 'contemplate[s] two processes—one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature; and . . . these processes are, for the most part, intended to operate independently of each other and to provide for different dispositions.' " (*McDaniel v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 76, 80 [27 Cal.Rptr.2d 149].)

Brierton cites to the principle that "a trial court's sentencing decision will not be disturbed in the absence of a clear showing that it was arbitrary or irrational," suggesting that the DMV's mandatory suspension order has disturbed the sentence the trial court imposed in this case. However, the DMV's suspension has not disturbed or otherwise interfered with the trial court's sentencing decision. The sentence remains in effect, and that portion of the sentence suspending Brierton's license runs concurrently with the DMV's suspension. (See *Robertson, supra,* 7 Cal.App.4th at p. 947 [when multiple suspensions are in effect at the same time, they will ordinarily run concurrently].) The mere fact that the conditions the DMV imposed in suspending Brierton's license are different from the conditions of Brierton's

---

[6] Brierton does not contend that the DMV's two-year administrative suspension constitutes double jeopardy, although his argument rests on the implied presumption that the DMV's suspension is a penal sanction that materially impairs the ability of a trial court to exercise its discretion in imposing a penal sanction.

criminal sentences resulting from his guilty pleas does not mean that the DMV's administrative suspension conflicts with the trial court's suspension or that it would in any way prevent Brierton from being able to fully serve his criminal sentence.

We note that a number of courts have upheld mandatory suspensions under section 13352 in instances where a trial court has imposed a sentence different from the suspension required under section 13352. (See, e.g., *Pollack, supra*, 38 Cal.3d at p. 370; *Baldwin v. Department of Motor Vehicles* (1995) 35 Cal.App.4th 1630, 1636 [42 Cal.Rptr.2d 422] [DMV properly revoked license of multiple offender, and despite fact that sentencing court imposed only probation and license restriction, DMV's revocation of license did not violate prohibition against double jeopardy]; *Corley, supra*, 222 Cal.App.3d at p. 78 ["[A]lthough Corley was most recently sentenced as a first offender, he in fact suffered two drunk driving convictions within a seven-year period. The Department has a mandatory duty to suspend his license pursuant to subdivision (a)(3) of Vehicle Code section 13352 [citation], and absolutely no power or duty to enforce the terms of his plea bargain. A writ of mandamus will not lie to compel the performance of an act where no duty exists"].)

In *Pollack*, the Supreme Court concluded that the DMV may suspend the license of a twice-convicted drunk driving offender under section 13352, subdivision (a)(3), even where the prior conviction was neither alleged nor proven during the defendant's second criminal proceeding. In reaching this conclusion, the *Pollack* court considered the relationship between the criminal sentencing provisions applicable to alcohol-related driving offenses and the DMV's administrative duties under section 13352. Pollack argued that because the prosecution in his second criminal case failed to allege or prove his prior conviction, he was not "punishable under [the criminal sentencing provision]" as a second offender within the meaning of section 13352, and that the DMV could not treat him as such. (*Pollack, supra*, 38 Cal.3d at p. 371, fn. omitted.) The Supreme Court disagreed, concluding that despite the reference to "offenses punishable under" the criminal sentencing provision in section 13352, subdivision (a)(3), the DMV is required to suspend the license of a twice-convicted drunk driver, regardless of whether the prior conviction is alleged or proved in the criminal proceeding. (*Pollack, supra*, at p. 377.) Since no prior conviction was alleged or proved in the criminal proceeding, the defendant's criminal sentence would have been less severe than the DMV's mandatory suspension under section 13352. The Supreme Court nevertheless upheld that administrative suspension.

None of these cases appears to have involved a challenge to section 13352 based on an argument that the DMV's mandatory suspension violates the

separation of powers doctrine. However, we have little doubt that the separation of powers issue was not raised in these cases because it is clear that the civil and criminal legislative schemes created, respectively, to protect the public from, and to impose punishment on, individuals who are convicted of multiple drunk driving offenses do not implicate separation of power concerns.[7] In *Vary v. Forrest* (1988) 201 Cal.App.3d 1506, 1513 [247 Cal.Rptr. 873], the court noted, "While *Pollack* deals specifically with the effect on license suspension of a prosecutor's failure to plead and prove a prior conviction for driving under the influence, its reasoning is applicable to a claim that sentencing consideration or restrictions in the underlying criminal case are relevant to the Department's duties to suspend and revoke under section 13352. The Department's duty . . . is to suspend or revoke a license based on the fact of convictions, and not on how offenders can be, or are, sentenced in the criminal courts."

In *Robertson, supra*, 7 Cal.App.4th at page 949, the court rejected an argument similar to Brierton's. Although *Robertson* dealt with the interaction between the then newly enacted administrative per se provisions governing the DMV and the second offender probation statutes applicable in the courts, the same principles apply here.[8]

In *Robertson*, the petitioner was sentenced as a second offender. The trial court required that he pay a fine, be confined to jail, and attend a drinking driver's program as part of the sentence. The court also restricted Robertson's driver's license for 18 months, allowing only travel to and from work, to and

---

[7] One appellate court has determined that section 13352 does not violate the doctrine of separation of powers. However, the opinion lacks meaningful analysis. (See *Nicolino v. Cozens* (1973) 33 Cal.App.3d 1024 [109 Cal.Rptr. 498].) In *Nicolino*, the trial court struck one of Nicolino's prior convictions and recommended no license suspension at all, prompting Nicolino to argue that the DMV was not authorized to suspend his driving privileges under section 13352 and that the provisions of section 13352 violate the doctrine of separation of powers. (*Nicolino, supra*, 33 Cal.App.3d 1024.) The *Nicolino* court concluded that the provisions of section 13352 do not violate the doctrine of separation of powers "as they do not simply provide the Department of Motor Vehicles with the *discretion* to decide whether or not suspension of driving privileges should be imposed, but require that suspension or revocation take place in specific instances." (*Nicolino, supra*, at p. 1026.) In our view, this is not the only, or even the most compelling, ground for concluding that the mandatory suspension provisions of section 13352 do not infringe on the core functions of the judicial branch.

[8] As the *Baldwin* court noted, the administrative per se provisions and section 13352 both serve to protect the public, not punish the offender: "[W]e do not find that the Legislature's enactment of the administrative per se statutes suggests that section 13352 serves a different purpose. On the contrary, that the Legislature acted to fill the gap section 13352's dependency upon convictions creates simply highlights the Legislature's overall concern for public protection. Enactment of the administrative per se statutes afforded the public protection both before and after conviction. It did not somehow transform the Legislature's purpose in enacting section 13352 from protection to punishment." (*Baldwin v. Department of Motor Vehicles, supra*, 35 Cal.App.4th at pp. 1640–1641.)

from jail, and to and from his rehabilitation program. (*Robertson, supra*, 7 Cal.App.4th at p. 943.) However, the DMV suspended Robertson's driver's license for a year, pursuant to the administrative per se statutes. The *Robertson* court determined that the DMV's suspension did not "intrude on the trial court's discretion in sentencing," even though the DMV's suspension was more severe than the driving restrictions the trial court imposed. (*Id.* at p. 949.)

■ Brierton does not challenge the DMV's one-year suspension pursuant to the administrative per se statutes. However, the effect of the one-year suspension in *Robertson* under the administrative per se provisions vis-à-vis the criminal sentence and the effect of the two-year suspension in this case under section 13352 vis-à-vis the criminal sentence the trial court imposed is the same: in each case, the administrative suspension is different from, and more severe than, the license suspension/restriction the court imposed in the criminal matter. The *Robertson* court rejected the argument that the imposition of the DMV's more strict administrative suspension intruded on the trial court's sentencing discretion. Thus, the fact that the DMV may impose an administrative sanction that is not identical to a trial court's sentence does not mean that the DMV's sanction violates the separation of powers doctrine.

■ Although Brierton suggests that the DMV should be constrained by the plea agreement between Brierton and the prosecution, which the trial court accepted, the fact that a defendant has bargained for more favorable treatment by a trial court in his criminal case does not affect the administrative suspension under section 13352. As the court explained in *Corley*, with regard to the effect of a plea bargain on the DMV's mandatory duties under section 13352: "[T]he Department had no part in the negotiations resulting in the plea bargain, and Corley received the benefit of his agreement with the prosecution and the court, in that the court granted him probation on terms applicable to a first, rather than a second, offender. The suspension imposed by the Department is an administrative remedy devised by the Legislature, based on compelling public policy considerations. . . . [¶] Here, although Corley was most recently sentenced as a first offender, he in fact suffered two drunk driving convictions within a seven-year period. The Department has a mandatory duty to suspend his license pursuant to subdivision (a)(3) of Vehicle Code section 13352 (*Williams v. Department of Motor Vehicles* [1969] 2 Cal.App.3d [949,] 953 [83 Cal.Rptr. 76]), and absolutely no power or duty to enforce the terms of his plea bargain. A writ of mandamus will not lie to compel the performance of an act where no duty exists." (*Corley, supra*, 222 Cal.App.3d at pp. 77–78.)

The same is true here. The DMV had no part in the negotiations that resulted in Brierton's plea bargain, and Brierton received the benefit of that agreement. The administrative process triggered as a result of Brierton's convictions is separate from the criminal matter. Additionally, Brierton was made aware of the potential civil sanctions he faced as a result of his two alcohol-related driving convictions. As part of his guilty plea, Brierton initialed next to paragraphs that informed him of the possibility that the DMV could impose a more severe license suspension than that imposed by the trial court, and he signed the DUI addendum.

Brierton asserts that *Helmandollar v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 52, 54 [9 Cal.Rptr.2d 155], stands for the proposition that a dispositional court order made pursuant to a plea bargain must constrain the DMV's power to impose a suspension under section 13353.2, subdivision (a), a provision that requires the immediate suspension of the driving privilege when a person drives with a blood-alcohol percentage of 0.08. *Helmandollar* does not support Brierton's contention.[9]

In *Helmandollar*, the DMV immediately suspended Helmandollar and Smith's licenses under section 13353.2 when each of them registered a blood-alcohol level of 0.12 after crashing into each other's vehicles. After a bench trial on certain issues, the court found the defendants not guilty of driving with a blood-alcohol level of 0.08 percent or more, but guilty of reckless driving. Eventually the two men pled nolo contendere to amended charges of alcohol related reckless driving. After their acquittals for driving with a blood-alcohol level of 0.08 percent or more, Helmandollar and Smith sought reinstatement of their driving privileges. The *Helmandollar* court determined that the defendants' driver's licenses must be reinstated because subdivision (e) of section 13353.2 clearly provided that if a person is acquitted of charges "relating to a determination of facts under subdivision (a)," the driver's license must be reinstated.

Thus, in *Helmandollar*, the plea bargain had nothing to do with requiring the DMV to reinstate the men's driving privileges; rather, it was the fact that they were acquitted of driving with a blood-alcohol level of 0.08 percent that placed a constraint on the DMV's ability to suspend their licenses.

---

[9] One could make the argument that the separation of powers doctrine would be implicated if, as Brierton urges, the court's action could limit the DMV's administrative options.

## IV.

## DISPOSITION.

The judgment of the trial court denying Brierton's petition for a writ of mandate is affirmed.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied July 5, 2006, and the opinion was modified to read as printed above.