Filed 9/16/14  Kushner v. Shiomoto CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LEE G. KUSHNER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JEAN SHIOMOTO, as Chief Deputy Director, etc.,<br><br>    Defendant and Respondent. | B249552<br><br>(Los Angeles County<br>Super. Ct. No. BS138894) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Luis Lavin, Judge.  Affirmed.

Lee G. Kushner, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Chief Assistant Attorney General, Michael E. Whitaker, and Michael J. Hui, Deputy Attorneys General, for Plaintiff and Respondent.

Lee Kushner, representing himself in this court as he did in the superior court, appeals the denial of his petition for writ of mandate challenging the suspension of his driving privileges by the Department of Motor Vehicles (Department). Kushner contends the Department should have investigated the facts underlying his traffic convictions before suspending his license for failure to pay the fine imposed by the criminal court, it was improper to suspend his license based on a fine that included a collection agency fee and suspension of his license under the circumstances here violated his fundamental right to drive. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Kushner was cited by a Beverly Hills police officer on September 1, 2010 for violating Vehicle Code sections 22400, subdivision (a) (impeding traffic),[1] and 22106 (unsafe backing).[2] Kushner contested the citations in traffic court in Beverly Hills. He was found guilty on May 17, 2011 after a bench trial and ordered to pay a fine, including court costs, of $440. The fine was to be paid within three months, that is, by August 17, 2011. Kushner apparently elected to do community service in lieu of paying the fine.

Kushner did not appeal the judgment. However, he sent a letter to the supervising judge at the Beverly Hills courthouse, complaining of the conduct of the bench officer who had presided at his trial and asking that the adverse judgment be set aside. The request was denied.

Kushner neither paid the fine nor completed his community service obligation. (Kushner subsequently asserted he was unable to do so because he "needed every spare moment to look for work.") The court referred the matter to a collection agency.

On February 6, 2012 GC Services Limited Partnership, Collection Agency Division, sent Kushner a "final notice" indicating there was a balance due of $740 on the outstanding judgment and advising him his failure to pay the full balance due or to

---

[1] Statutory references are to the Vehicle Code unless otherwise indicated.

[2] Our description of the events preceding the filing of Kushner's petition for writ of mandate is based primarily on the exhibits attached to his petition.

2

establish an approved payment plan within 30 days could result in the suspension of his driving privileges. Kushner apparently attempted to pay something less than the full $740 balance but his proffer was refused by the collection agency.

The Department served Kushner with an order of suspension on April 16, 2012, notifying him his driving privileges would be suspended as of May 16, 2012 pursuant to Vehicle Code section 13365 because he had failed to pay an outstanding fine. The order further stated the suspension would remain in effect until all past due fines had been paid.

On April 25, 2012 Kushner wrote the superior court, seeking to return the case to the court's calendar to permit him to request a reduction of the imposed fine and the $300 collection fee. In a response dated May 14, 2012 the court directed Kushner to the collection agency to make payment arrangements.

Kushner filed his petition for writ of mandate on August 14, 2012, directed to George Valverde, then director of the Department, seeking to set aside his license suspension. The matter was argued and submitted on March 28, 2013. In its written decision and order denying writ of mandate, the superior court rejected what it understood to be Kushner's argument that he was entitled to a new hearing before the Department suspended his driving privileges. The court first found the court appearances resulting from the traffic citations that led to imposition of the fine satisfied the hearing requirements of due process. The court then ruled Kushner could not collaterally attack the court order requiring him to pay the fine through a mandamus proceeding: "If Petitioner was dissatisfied with the court's May 17, 2011 order, or his subsequent attempts to get the fine reduced, he should have filed an appeal."

Kushner filed a timely notice of appeal.

### DISCUSSION

1. *The Law Governing Suspension of a Driver's License for Failure To Pay Fines*

A first offense infraction violation of the Vehicle Code is punishable by a fine not exceeding $100. (§ 42001, subd. (a)(1).) In addition to the base fine, however, various mandatory penalties, fees and assessments, which can total approximately 300 percent of

3

the base fine, must be added.  (See, e.g., Pen. Code, § 1464, subd. (a)(1) [state penalty of $10 for every $10 of fine imposed for all criminal offenses including Vehicle Code violations except parking offenses]; Gov. Code, § 70373, subd. (a)(1) [mandatory assessment to maintain adequate funding for court facilities imposed on every conviction for a criminal offense, "including a traffic offense" except parking offenses]; see generally § 40310 [authorizing Judicial Council to establish uniform bail and penalty schedules]; Cal. Rules of Court, rule 4.102.)  Before imposing a fine for conviction of a Vehicle Code violation, the court must, on the defendant's request, consider the defendant's ability to pay.  (§ 42003, subd. (c).)  The defendant has the burden of demonstrating his or her lack of ability to pay.  (*Ibid.*; see also § 42003, subd. (e) "[a]t any time during the pendency of the judgment rendered according to the terms of this section, a defendant against whom a judgment has been rendered may petition the rendering court to modify or vacate its previous judgment on the grounds of a change of circumstances with regard to the defendant's ability to pay the judgment"].)

The court generally sets a specific time for payment of the fine.  (§ 42003, subd. (a) ["[a] judgment that a person convicted of an infraction be punished by a fine may also provide for the payment to be made within a specified time or in specified installments"].)  A late charge in the amount of 50 percent of the total initial fine may be added if the fine is not paid on time.  (§ 40310.)

The willful failure to pay a fine imposed by the court for a Vehicle Code violation within the time authorized by the court and without presenting a lawful excuse before the fine is due is a misdemeanor.  (§ 40508, subd. (b).)  In addition to any other penalty, pursuant to Penal Code section 1214.1, subdivision (a), the court may impose a civil assessment of up to $300 against any defendant who fails, after notice and without good cause, to pay any portion of a fine ordered by the court.

Section 40509, subdivision (b), authorizes the court to notify the Department of the defendant's failure to pay a fine within the authorized time.  Section 13365, subdivision (a), in turn, provides, "Upon receipt of notification of a violation of

4

subdivision (a) or (b) of Section 40508, the department shall take the following action: [¶] (1) If the notice is given pursuant to subdivision (a) or (b) of Section 40509, if the driving record of the person who is the subject of the notice contains one or more prior notifications of a violation pursuant to Section 40509 or 40509.5, and if the person's driving privilege is not currently suspended under this section, the department shall suspend the driving privilege of the person." The suspension continues until the person's driving record does not reflect any unresolved violations of section 40508, subdivisions (a) or (b). (§ 13365, subd. (a); see § 12807, subd. (c) [the Department shall not issue or renew a driver's license to any person "[w]hen the department has received a notice pursuant to Section 40509 or 40509.5, unless the department has received a certificate as provided in those sections"].)

   2. *The Department Was Not Obligated To Hold a Hearing or Conduct an Investigation Before Suspending Kushner's License*

As just discussed, section 13365, subdivision (a), requires the Department to summarily suspend a driver's license upon receipt of notice from the court that the licensee failed to pay a fine within the authorized time.[3] The summary nature of that suspension is reinforced by section 14101, subdivision (a), which provides a person is not entitled to a hearing "[i]f the action by the department is made mandatory by this code." Kushner does not contend he has paid the fine imposed, the notice from the court to the Department that the fine remained unpaid was somehow incorrect or the notice was not actually received by the Department prior to issuance of the suspension notice.

---

[3] At oral argument Kushner asserted for the first time there was no evidence in the record that the superior court had properly notified the Department of his failure to pay the fine within the authorized time, as provided by section 40509, subdivision (b), thereby triggering mandatory suspension of his license pursuant to section 13365, subdivision (a). Because this argument was not presented as one of the grounds for his petition for writ of mandate, the Department had no reason to include the section 40509 notice in responding to the petition. Moreover, pursuant to Evidence Code section 664 and in the absence of evidence to the contrary, we presume an official duty [here, providing notice to the Department when Kushner's time to pay the fine and related assessments had expired] "has been regularly performed."

Accordingly, there is no basis for this court to reverse the superior court's denial of the petition for a writ of mandate.

As the superior court explained, although the Supreme Court in *Rios v. Cozens* (1972) 7 Cal.3d 792 held a person's interests in the retention of his or her driver's license and the use of his or her motor vehicle are sufficiently important to trigger the due process requirement of a hearing before being deprived of those interests, in the circumstances here Kushner's due process rights were fully satisfied by his opportunity to challenge the evidence against him and to present evidence on his own behalf before the traffic court in Beverly Hills. (*People v. Bailey* (1982) 133 Cal.App.3d.Supp. 12, 16 ["the determination of license suspension by the Department of Motor Vehicles without affording the licensee an opportunity for a hearing beyond the court appearances directed by the summons on the traffic citations sufficiently complies with the 'meaningful' and 'appropriate' hearing requirements of due process"]; see also *id.* at p. 15 ["[i]t would be a legal absurdity to require the Department of Motor Vehicles to grant a hearing on the question of whether a person did in fact violate his written promise to appear on a traffic citation, when the court where appearance was required has already made such a finding"].)

In this court Kushner appears to contend, not that the Department was obligated—either by statute or principles of due process—to hold a hearing before suspending his license, but that (a) it had the discretion to investigate the underlying circumstances of the infractions and the legitimacy of the total fine ultimately imposed, and (b) its failure to do so and to set aside the final $300 penalty assessment (or "collection agency fee," as he describes it) was arbitrary and capricious. The Department insists it had no such discretion since license suspension under section 13365, subdivision (a), by its express terms, is mandatory.

The Department is correct: The independent review of traffic court proceedings sought by Kushner is nowhere authorized by the Vehicle Code. (See *Williams v. Department of Motor Vehicles* (1969) 2 Cal.App.3d 949, 953-954 [individual whose

6

license was suspended by the Department pursuant to a mandatory provision in the Vehicle Code had to seek a writ of mandamus directly against the criminal court to challenge the validity of one of his convictions for driving under the influence of alcohol; "[t]he Department cannot exercise the judicial power required to nullify the prior conviction"]; see generally *Laisne v. California State Board of Optometry* (1942) 19 Cal.2d 831, 834-835 [explaining limits on administrative agency's ability to "exercise judicial power"].)

But even if Kushner were right, mandamus will not lie to control an exercise of discretion, that is, to compel a public official to exercise his or her discretion in a particular manner. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.) "Generally, Code of Civil Procedure section 1085 may only be employed to compel the performance of a duty which is purely ministerial in character. [Citation.] [¶] A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion, on the other hand, is the power conferred on public functionaries to act officially according to the dictates of their own judgment." (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501-502; see *Brierton v. Department of Motor Vehicles* (2006) 140 Cal.App.4th 427, 437 ["'[a] writ of mandamus will not lie to compel the performance of an act where no duty exists'"].) "Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700-701; accord, *Landsborough v. Kelly* (1934) 1 Cal.2d 739, 744.)[4]

---

[4]  To the extent Kushner attempted to plead a cause of action for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5, there simply is no basis for such a claim. On the facts presented the challenged action (or inaction) by the Department was not quasi-judicial in nature. (See, e.g., *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 566 [a party seeking review of a

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.


PERLUSS, P. J.


We concur:



ZELON, J.



SEGAL, J.*

---

public agency decision may bring an administrative mandamus action if the agency decision was "made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency . . ."]; *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1729 ["[s]ection 1094.5 expressly provides that it is the *requirement* of a hearing and taking of evidence—not whether a hearing is actually held and evidence actually taken—that triggers the availability of mandamus review"].)

\*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.